**In re MARKS & GOERGENS, INC., a Michigan corporation, Debtor.**

**Kenneth A. NATHAN, Trustee, Plaintiff,**

**v.**

**John T. SHEA, John F. Clark, and Paul Inman Associates, Inc., a Michigan corporation, Defendants.**

Bankruptcy No. 93–52783.
Adversary No. 95–4668.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 29, 1996.

Geoffrey Silverman, W. Bloomfield, Michigan, for Plaintiff.

Lenora Roland, Southfield, Michigan, Stephen Valentine, W. Bloomfield, Michigan, for Defendants.

## MEMORANDUM OPINION AND ORDER

STEVEN W. RHODES, Chief Judge.

The matter before the Court is the trustee's motion to disqualify the law firm of Sommers, Schwartz, Silver & Schwartz from representing defendants John T. Shea and John F. Clark. The Court heard oral argument and took this matter under advisement. The Court concludes that the trustee's motion should be granted.

### I.

Shea and Clark are the majority shareholders and officers of the debtor. Sommers, Schwartz represented the debtor in April of 1993. The representation involved the sale of the debtor's assets to defendant Paul Inman Associates.

Prior to the sale, the debtor had terminated all business operations. An involuntary chapter 7 was filed against the debtor on November 29, 1993.

Subsequently, in August of 1995, the trustee initiated this adversary proceeding. In the complaint, the trustee claims that the consideration paid by Paul Inman to the debtor for its assets in the April 1993 sale was for less than reasonably equivalent value. The trustee further claims that the sale enabled Shea and Clark to receive preferential transfers on account of their antecedent obligations and/or fraudulent conveyances on account of their stock interests in the debtor.

At the time the trustee filed the adversary, he was aware that Sommers, Schwartz might possibly represent Shea and Clark. Sommers, Schwartz did not file their appearance until October 17, 1995. Three days later, when the Court held a status conference in the case, the conflict of interest issue was raised. The matter was not resolved at that time; the Court ordered Shea and Clark to answer the trustee's complaint by November 6, 1995, and, as Paul Inman had filed a jury demand, issues regarding a jury trial were

discussed. The Court recommended the district court withdraw its reference, and an order withdrawing the reference was issued on November 21, 1995. In the meantime, Sommers, Schwartz filed an answer to the complaint on behalf of Shea and Clark.

The district court issued a scheduling order for the case in late December, 1995. Shortly thereafter, Paul Inman withdrew its jury demand. Consequently the case was referred back to this Court on February 8, 1996. The trustee brought this motion to disqualify Sommers, Schwartz almost immediately afterwards, on February 16, 1996.

## II.

The trustee contends that Sommers, Schwartz's representation of Shea and Clark violates Rules 1.9(a) and 1.10 of the Michigan Rules of Professional Conduct. Specifically, the trustee alleges that through its representation of the debtor, Sommers, Schwartz was privy to information regarding the facts and motivations underlying the April 1993 sale, the steps taken to sell the debtor's assets, and the reasons why the sale was arranged as it was. The trustee contends this is significant because he is challenging the sale price and the fact that the sale enabled Shea and Clark to recover their equity from the debtor without satisfying creditor claims in full. The trustee maintains that Sommers, Schwartz possesses information about the debtor and the sale which can be used against the trustee in the present adversary. Additionally, the trustee asserts that valuable information regarding the debtor is unavailable or limited because of lack of cooperation from Sommers, Schwartz and/or attorney-client privileges in favor of Shea and Clark, to the prejudice of the estate.

The trustee further notes that Rule 3.7(b) of the Michigan Rules of Professional Conduct will be violated unless Sommers, Schwartz is disqualified because it is likely that one or more of the firm's lawyers will be called as witnesses in the case.

Sommers, Schwartz contends that it should not be disqualified from representing Shea and Clark. First, Sommers, Schwartz argues that this adversary is not substantially related to its prior representation of the debtor. The firm maintains that it represented the debtor for approximately two weeks only, and that when it was retained, the allocation and economic structure of the April 1993 sale had already been agreed upon by the parties. In fact, Sommers, Schwartz asserts, it was Paul Inman Associates who dictated the terms of the sale. Second, Sommers, Schwartz asserts that it possesses no secrets of the debtor that might be divulged to harm the trustee in the present adversary. The firm maintains that any information it may have with respect to the debtor was obtained from Shea and Clark as shareholders and officers of the debtor, and that the debtor could not expect such information to be confidential. The law firm therefore contends that the trustee's motion should be denied because the potential damage resulting from a breach of its duty of loyalty to the debtor would be *de minimis*. Moreover, Sommers, Schwartz suggests that the trustee's motion is motivated by purely tactical considerations.[1]

## III.

Rule 1.9(a) of the Michigan Rules of Professional Conduct provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Further, under Rule 1.10(a), one lawyer's disqualification under Rule 1.9(a) will be imputed to the lawyer's entire firm.

██ Under Rule 1.9(a), when an attorney has been directly involved in a specific transaction, that attorney is prohibited from

---

1. Sommers, Schwartz also argues that the trustee waived the right to disqualify Sommers, Schwartz by bringing this motion three months after the firm filed its answer on behalf of Shea and Clark. However, the Court rejects the waiver argument made by Sommers, Schwartz. The Court finds that given the uncertainty of the forum for this dispute, the trustee timely filed the motion to disqualify.

later representing another client with materially adverse interests. In moving for disqualification, the former client need only demonstrate that an attorney-client relationship previously existed between itself and the attorney appearing on behalf of an adversary, and that the subject matter of the pending proceeding is substantially related to the prior representation. *General Elec. Co. v. Valeron,* 608 F.2d 265, 267 (6th Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). A substantial relationship between the two representations exists if there are common factual questions, *i.e.,* " 'if facts pertinent to problems for which the original legal services were sought are relevant to the subsequent litigation.' " *Anchor Packing Co. v. Pro–Seal, Inc.,* 688 F.Supp. 1215, 1221 (E.D.Mich.1988) (*quoting U.S. Football League v. National Football League,* 605 F.Supp. 1448, 1459 (S.D.N.Y. 1985)).

■ If the court determines that a substantial relationship exists, a presumption is created that the attorney will use information received from the former client in the ethical obligation to vigorously represent the present client, thus violating the ethical obligations of loyalty and confidence. *Anchor Packing,* 688 F.Supp. at 1221.

■ This presumption is generally not rebuttable. *Id.* at 1225 (*citing Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1028 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266–67 (7th Cir.1983); *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602, 608 (8th Cir.1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978), *overruled on other grounds, In re Multi–Piece Rim Prod. Liab. Litig.,* 612 F.2d 377 (8th Cir. 1980); *Trone v. Smith,* 621 F.2d 994, 1000 (9th Cir.1980)).

■ The Court concludes that Sommers, Schwartz must be disqualified. The debtor and Sommers, Schwartz had a prior attorney-client relationship. The subject matter of the debtor's relationship with Sommers, Schwartz was the sale of the debtor's assets. Now, Sommers, Schwartz represents the debtor's principals in an adversary proceeding against them brought by the trustee, in the shoes of the debtor, which relates to that same sale. Thus, the interests of Shea and Clark are directly adverse to the interests of the debtor and the trustee. Further, a substantial relationship exists between Sommers, Schwartz's prior representation of the debtor and the trustee's pending adversary. The sale of the debtor's assets was the subject of the prior representation, and the facts and circumstances of the sale are directly at issue here. Facts relevant to the prior representation will be pertinent evidence in the present action. If permitted to represent Shea and Clark, Sommers, Schwartz would have an unfair advantage over the trustee because of the information in its possession from the prior representation. Rule 1.9(a) prohibits such representation without regard to whether Sommers, Schwartz actually possesses such information or has used it against their former client.

### IV.

■ Sommers, Schwartz, however, has argued that the Court should follow a test for successive representation cases used by the Sixth Circuit in *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio,* 900 F.2d 882 (6th Cir.1990), which arguably adds an additional requirement that the attorney sought to be disqualified *actually* acquired confidential information from the former client. *Dana Corp.,* 900 F.2d at 889 (*citing City of Cleveland v. Cleveland Elec. Illuminating,* 440 F.Supp. 193, 207 (N.D.Ohio 1976), *aff'd,* 573 F.2d 1310 (6th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978)). Sommers, Schwartz maintains that they did not acquire confidential information from the debtor regarding the sale, and so should not be disqualified.

The suggestion in *Dana* that confidential information actually be disclosed is a radical departure from the established law regarding successive representations. First, as indicated above, Rule 1.9(a) does not require an actual disclosure. Second, the debtor has an interest in maintaining the confidentiality of the disclosures made to its attorney in the prior representation. *See Anchor Packing,*

688 F.Supp. at 1216. Sommers, Schwartz has a corresponding duty of loyalty to the debtor, its former client. This obligation entails keeping the debtor's confidences. This ethical responsibility is so important that Rules 1.9(a) and 1.10(a) do not require a showing that the responsibility has actually been breached before prohibiting a lawyer or law firm from undertaking representation directly adverse to a former client without the client's consent. Such ethical considerations are to be taken very seriously. *See Melamed v. ITT Continental Baking Co.,* 592 F.2d 290, 293 (6th Cir.1979) ("In most situations, the simple appearance of a conflict would be sufficient to cause this court to disqualify an attorney.").

In the course of representing the debtor regarding the sale of its assets, Sommers, Schwartz undoubtedly acquired information pertaining to the sale. This information is protected from use by Sommers, Schwartz against the debtor. *See Anchor Packing,* 688 F.Supp. at 1217–18 (*quoting Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 (5th Cir.1979)). The information is protected " 'without regard to whether someone else may be privy to it.' " *Id.* at 1218 (*quoting Brennan's,* 590 F.2d at 172).

Further,

> The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance clients place in their attorneys. A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same matter. As the court recognized in *E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 395 (S.D.Tex. 1969), this would undermine public confidence in the legal system as a means for adjudicating disputes.

*Id.* (*quoting Brennan's,* 590 F.2d at 172).

In keeping with these ideas, "a test has been developed which specifically attempts to avoid requiring the Court to inquire into whether confidences were *actually* exchanged. Instead, the courts initially look to determine whether there is a substantial relationship between the two cases and then make presumptions on the basis of that rela-

tionship." *Id.* at 1225. The entire rationale supporting the substantial relationship test would be undermined if a former client was required to show that an attorney actually acquired confidential information from the former client; such a requirement would force the former client to reveal the content of any communications with the attorney. *See id.*

In *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953), the attorney sought to be disqualified contended, as Sommers, Schwartz does here, that he had received no confidential communications from his former client, whom he was now acting against. The attorney also argued that no attempt had been made to relate any confidential information he allegedly received to any use which might be made of them in the pending litigation. The court rejected these arguments, ruling that the former client was not required to show that in the prior litigation it disclosed confidential information to the attorney related to the pending case. *T.C. Theatre,* 113 F.Supp. at 268. Instead, the court held that

> the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action where in the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

> To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confi-

dences in fact revealed would require disclosure of the very matters intended to be protected by the rule. It would defeat an important purpose of the rule of secrecy— to encourage clients fully and freely to make known to their attorneys all facts pertinent to their cause. Considerations of public policy, no less than the client's private interest, require rigid enforcement of the rule against disclosure. No client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney.

*Id.* at 268–69.

The reason for declining to make a direct inquiry into the communication of information was also discussed in *U.S. Football League v. National Football League,* 605 F.Supp. 1448 (S.D.N.Y.1985). There, the court explained that the substantial relationship test

serves as a substitute for proof that is generally improper for a court to entertain. The test for disqualification requires a finding of a substantial relationship between the two representations because that finding is the basis of a presumption that the former client of the challenged firm imparted to the firm confidential information relevant to the present suit. The presumption arises in order to forestall a direct inquiry into whether confidential information was in fact transmitted by the client. Such an inquiry would be improper; it would put the movant to the choice of either revealing its confidences in order to prevail on the motion or else refraining from moving to disqualify, thereby running the risk that its adversary will use its confidences against it in the litigation.

*U.S. Football League,* 605 F.Supp. at 1461 (citations omitted).

Unfortunately, the opinion in *Dana* does not discuss or analyze why the movant must show that confidential information was actually disclosed. This is troubling, given the significant reasons for not requiring a showing that information was acquired by an attorney from a former client. The opinion merely states the additional requirement, citing without comment *City of Cleveland v.*

*Cleveland Elec. Illuminating,* 440 F.Supp. 193, 207 (N.D.Ohio 1976), *aff'd,* 573 F.2d 1310 (6th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). However, *Dana* was resolved on the grounds that there was no past relationship between the moving party and the law firm sought to be disqualified and that the prior representation was not substantially related to the pending proceeding. *Dana,* 900 F.2d at 889. So, in *Dana,* the court never actually analyzed or applied the requirement that confidential information be acquired. Accordingly, its statement of such a requirement appears to be *dicta.*

Moreover, it is interesting to note that the opinion seems to acknowledge that the presumption of having acquired confidential information arises when there is a substantially related prior attorney-client relationship. *Id.* ("Thus, we need not reach the issue raised by Blue Cross concerning whether the presumption of acquiring confidential information is rebuttable.")

The *City of Cleveland* opinion similarly provides no explanation for the test it recites. In fact, the *City of Cleveland* opinion purported to follow the substantial relationship test advanced in *T.C. Theatre. City of Cleveland,* 440 F.Supp. at 206–07.

Allegedly following *T.C. Theatre, City of Cleveland* states the following test for disqualification: (1) a past attorney-client relationship between the party seeking disqualification and the attorney it seeks to disqualify, who represents an adverse party in the subsequent litigation; (2) the subject matter of the former representation and the subsequent litigation is substantially related; and (3) the attorney sought to be disqualified acquired confidential information from its former client. *See id.* at 207.

Again, it is interesting to note that the court in *City of Cleveland* went on to state that the general rule in disqualification cases is that the acquisition of confidential information is presumed once it is established that a former attorney-client relationship existed concerning substantially related matters. *Id.* at 209. However, the court then concluded that the presumption was rebuttable. *Id.*

This conclusion was apparently premised on two facts. First, the attorneys and law firm sought to be disqualified had previously represented the city on a bond issue, which, by law, was a matter of public record. *Id.* at 209. Second, the law firm in question was the largest in Ohio, with approximately 180 partners and associates, and departmentalized into five sections. The lawyer who had represented the city on the bond issue worked in the highly specialized bond division of the public law section of the firm; the lawyer who was currently representing the party opposing the city was assigned to the firm's litigation section. The court stated that a rule analogous to the doctrine of vertical responsibility, whereby former government attorneys are imputed with the confidences of subordinates serving within the same section of government service as the former attorney, should be applied in the private sector to limit the presumption of confidential disclosures to only those individual lawyers practicing in the attorney's area of concentration. According to the court, "Absent direct proof to the contrary, the attorney would not be deemed to have shared confidential information relating to matters and services exclusively within the sphere of representation of another department or section of his firm." *Id.* at 211. The court then found that there was no evidence of actual confidential disclosure between the two attorneys, and ruled that despite their firm's prior representation of the city, the firm was not disqualified from representing a party opposing the city in the pending dispute. *Id.*

Two observations may be made from the *City of Cleveland* case. First, the court there recognized that the general presumption regarding confidential information may be rebuttable under certain circumstances—namely, in cases involving matters of public record and very large law firms. Second, the court's reasoning that the law firm was so large that the two attorneys involved could not possibly have exchanged confidential information about their respective clients, more appropriately supports a conclusion that there was no substantial relationship between the prior representation and the subsequent litigation. More accurately, the presumption of exchanged confidences never arose in *City of Cleveland* because the court found that there was no substantial relationship in that case. In any event, the court in *City of Cleveland* was unable to find that the subsequent representation was adverse to the prior representation. *City of Cleveland,* 440 F.Supp. at 208. It is also unclear whether the Ohio law applicable in *Dana* and *City of Cleveland* is similar to the Michigan law applicable in this case. The opinions in those cases simply do not contain a sufficient discussion of Ohio law to permit this Court to make that determination.

Accordingly, the Court finds that neither *Dana* or *City of Cleveland* are substantial authority for requiring former clients to prove that an attorney or law firm sought to be disqualified actually acquired confidential information from the former client.

## V.

Sommers, Schwartz nonetheless urges this Court to apply the test from *Dana* because it was applied in a case in this district, *Harris v. Agrivest Ltd. Partnership II,* 818 F.Supp. 1035 (E.D.Mich.1993). The Court rejects this argument.[2]

First, as in *Dana,* the *Harris* decision contains no analysis in its application of the modified test for disqualification. Further, the *Harris* case dealt expressly with Rule 1.9(b) of the Michigan Rules of Professional Responsibility. That subsection of Rule 1.9 pertains solely to limitations upon an attorney as a result from work done by a firm with which the attorney was previously associated. Rule 1.9(b), unlike Rule 1.9(a), specifically requires a finding that the attorney had acquired protected or confidential information. The Court here is concerned with the application of Rule 1.9(a) only. This case is about the limitations upon a lawyer and a law firm as a result of a prior representation. *Harris* is simply not on point.

---

2. The Court notes that it is not bound to apply the decisions of the district court. *In re Gaylor,* 123 B.R. 236 (Bankr.E.D.Mich.1991).

Moreover, the *Harris* court found that case distinguishable from *Anchor Packing*. The present case is not. *Anchor Packing* involved a law firm's prior representation of a corporation and its employees in an employment termination suit. Later, the employees left the corporation to form a competing business. The corporation then sued former employees and their competing business for breach of contract, breach of covenants not to compete, and tortious interference with business relations, using the same law firm who had represented the corporation and the employees in the termination suit. The former employees moved to disqualify the law firm on the ground that the firm had an unfair advantage because it had obtained substantial information during the termination suit which could be used against them in the pending suit. After determining that joint representation cases were not distinguishable from successive representation cases, the *Anchor Packing* court held that disqualification of the law firm was justified because the prior suit and the pending suit were substantially related. *Anchor Packing*, 688 F.Supp. at 1221.

The facts of this case fall squarely under *Anchor Packing*. Accordingly, there is no justification for the Court to follow *Harris*.

 Finally, the Court rejects Sommers, Schwartz's argument that disqualification should be denied because the debtor could have no reasonable expectation of confidentiality in any information conveyed to the firm in the prior representation, since Sommers, Schwartz received all information it currently possesses from Shea and Clark. This is precisely the argument that was rejected in *Anchor Packing*. *Id.* at 1216–17. The magistrate judge in *Anchor Packing* had ruled that the former employees, who along with their employer corporation were jointly represented by one law firm, could have no reasonable expectation of confidentiality with respect to statements made during the prior representation. But the district court reversed, because "neither [the magistrate judge] nor those cases which ostensibly support his position ever addressed the ethical obligation of an attorney in this situation." *Id.* at 1217. As discussed above, this ethical obligation, that a lawyer should not use information acquired in the course of representing a client to the disadvantage of the client, "'exists without regard to the nature or source of information or the fact that others share the knowledge.'" *Id.* (quoting *Brennan's*, 590 F.2d at 172).

Therefore, for the foregoing reasons, the Court will grant the trustee's motion to disqualify Sommers, Schwartz from representing the defendants John Shea and John Clark. Shea and Clark shall have thirty days from the date of this Order in which to obtain new counsel.

IT IS SO ORDERED.