In re PGH INTERNATIONAL, INC., Prague Shoe Company, Inc., Hofheimer's Shoe Company, Inc., Debtors.

PGH INTERNATIONAL, INC., Prague Shoe Company, Inc., Hofheimer's Shoe Company, Inc., Plaintiffs,

v.

GABOR SHOES AG, Defendant.

Bankruptcy Nos. 97–34628 to 97–34630. Adversary No. 98–3097. Nos. 20, 21.

United States Bankruptcy Court, D. Connecticut.

July 17, 1998.

Mark A. Rosenblum, Rogin, Nassau, Caplan, Lassman & Hirtle, L.L.C., Hartford, CT, for Plaintiffs.

Craig M. Walker, Rogers & Wells, L.L.P., New York City, Stuart R. Wolk, Wolk, Neuman & Maziarz, Hartford, CT, for Defendant.

### MEMORANDUM OF DECISION ON MOTION TO DISQUALIFY COUNSEL

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

Before the Court is the motion of the Plaintiffs to disqualify the law firm of Rogers & Wells, LLP (hereafter "Rogers & Wells") from representing the Defendant, Gabor Shoes AG, in this adversary proceeding. This contested matter raises important issues concerning the application in Connecticut's federal courts of certain rules of the Connecticut Rules of Professional Conduct. For the reasons that follow, this Court will disqualify the law firm of Rogers & Wells from representing the Defendant in the instant adversary proceeding.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core

proceeding" pursuant to 28 U.S.C. § 157(b)(2). This memorandum shall constitute the Court's Findings of Fact and Conclusions of Law for purposes of Federal Rule of Bankruptcy Procedure 7052, if applicable.

### III. FACTUAL BACKGROUND

The Plaintiffs in this adversary proceeding are debtors-in-possession—fiduciaries for and successors to—the Debtors PGH International, Inc. (hereafter "PGH International"), Prague Shoe Company, Inc. (hereafter "Prague") and Hofheimer's Shoe Company, Inc. (hereafter "Hofheimer's") (PGH International, Prague and Hofheimer's shall hereafter be referred to collectively as the "Debtors"). The Defendant is a German corporation with its principal offices in the Republic of Germany. It is uncontested that prior to September 19, 1997, the Defendant and the Debtors were at one time affiliates. The Defendant was the sole stockholder of PGH International, which in turn, was the sole shareholder of Prague and Hofheimer's. On or about September 19, 1997, the Defendant sold its entire stock interest in PGH International to a newly-formed entity, PGH Acquisition LLC.

During the 1980's, while associated with another law firm, certain attorneys now associated with Rogers & Wells represented the Defendant and Prague in connection with various legal matters. In early 1994, other law firms were retained by the Defendant and/or its subsidiaries. In late 1995, Rogers & Wells became primary United States outside counsel for the Defendant, and continues in that role today.

The Defendant asserts that it is imperative that Rogers & Wells continue to represent it in this adversary proceeding because Rogers & Wells is uniquely qualified to provide it with legal representation in the United States due to the following: (i) Rogers & Wells maintains offices in Frankfurt, Germany; (ii) Rogers & Wells' "German Practice Group" represents several German clients with similar needs and concerns as the Defendant's; and (iii) several members of Rogers & Wells' "German Practice Group" who are admitted to practice in both Germany and the United States are fluent in German and, hence, are able to effectively communicate with the Defendant's German-speaking management. It is undisputed that in connection with its representation of the Defendant in the 1980's, and beginning again in 1995, Rogers & Wells also assumed legal representation of certain of the Defendant's affiliates—namely, the Debtors—in connection with a variety of legal matters, including immigration, copyright protection, and real estate transactions and litigation.

Critically, Rogers & Wells also represented the Debtors in the negotiation and November 14, 1996 closing of a Loan and Security Agreement (hereafter the "Foothill Loan") by and between the Debtors and Foothill Capital Corporation (hereafter "Foothill"). The Foothill Loan provided that Foothill would make revolving advances to the Debtors up to a maximum of $10 million. The language of the Foothill Loan contemplates that the Debtors would use the proceeds thereof to repay the "Old Lender"—that being Crestar Bank—and to repay up to $2,000,000 in indebtedness owed to the "Parent"—that being the present Defendant. Rogers & Wells also issued an opinion letter in connection with the Foothill Loan. The opinion letter covered various issues regarding the validity of the Foothill Loan; however, Rogers & Wells never opined as to the Debtors' solvency.

In or about December 1996, consistent with the contemplation of the Foothill Loan, the Debtors repaid the entire balance owing to Crestar Bank (approximately $1.6 million) and to the Defendant (approximately $2.0 million). In the present adversary proceeding, the Plaintiffs, acting in their capacity as debtors-in-possession, seek to avoid and recover these payments from the Defendant as direct and indirect preferential transfers under Bankruptcy Code Sections 544, 547 and 550.

Two principals of Rogers & Wells—a Mr. Jander and a Mr. McDermott—served for a time as officers of the Debtors and/or as members of the Debtors' board(s) of directors. In those capacities they apparently voted with others to approve the Foothill Loan transaction.

Rogers & Wells is an unsecured creditor of Plaintiffs, and has filed proofs of claim in the Debtors' jointly administered bankruptcy cases seeking $105,952.04 in unpaid legal fees arising from services unrelated to the transactions at issue in this adversary proceeding. The Defendant has fully consented to Rogers & Wells continuing to act as its counsel in this adversary proceeding while at the same time asserting rights as an unsecured creditor in the Debtors' bankruptcy cases.

## IV. DISCUSSION

### A. Governing Law.

■ There is no national body of ethical standards applicable to this matter. Although the Bankruptcy Code and Federal Rules of Bankruptcy Procedure provide ethical guidelines for the engagement of legal counsel, they do so only for counsel to be employed by an estate representative or official committee. *See, e.g.,* 11 U.S.C. §§ 327, 1103(b).

Instead, the resolution of this matter is governed initially by Local Bankruptcy Rule 1001–1(b), which provides—

All Local Rules of Civil Procedure of the United States District Court for the District of Connecticut shall apply in cases or proceedings in the Bankruptcy Court insofar as they are relevant and not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, these Local Rules of Bankruptcy Procedure, and the case management procedures applicable at the seat of the Bankruptcy Court to which the case or proceeding has been assigned.

D.Conn. LBR 1001–1(b).

Rule 3(a) of the Local Rules of Civil Procedure of the District of Connecticut provides in relevant part as follows:

1. Other than the specific Rules enumerated in Rule 3(a)2 of these Local Rules, this Court recognizes the authority of the "Rules of Professional Conduct," as approved by the Judges of the Connecticut Superior Court as in effect on October 1, 1986, as expressing the standards of professional conduct expected of lawyers practicing in the District of Connecticut . . . . The interpretation of said Rules of Professional Responsibility by any authority other than the United States Supreme Court, the United States Court of Appeals for the Second Circuit and the United States District Court for the District of Connecticut shall not be binding on disciplinary proceedings initiated in the United States District Court for the District of Connecticut.

2. Rules 3.6 and 3.7(b) of the Rules of Professional Conduct are not adopted as rules governing professional conduct in the District of Connecticut . . . . The ethical standards governing participation as counsel in a case where either the attorney or another attorney in his or her firm may be a witness for both civil and criminal cases are set forth in Local Rule 33.

### B. Claimed Bases for Disqualification.

The Plaintiffs here have highlighted three potential grounds for the disqualification of Rogers & Wells under applicable Local District Court Rules and the Connecticut Rules of Professional Conduct.

#### 1. Counsel as Witness.

First, the Plaintiffs have claimed that Messrs. Jander and McDermott are likely to be called as witnesses in this adversary proceeding in view of (i) their roles with the Plaintiffs in the relevant time-frame and (ii) their actual participation in the subject transactions by assenting vote. This prospect, the Plaintiffs have contended, compels resignation or disqualification under the standards of Local District Court Rule 33.[1] At the

---

1. Rule 33 provides as follows:
    (a) **Refusing Employment When Counsel May be Called as a Witness.**
    A lawyer shall not accept employment in contemplated or pending litigation if he or she knows or it is obvious that he or she or a lawyer in the same firm ought to be called as a witness, except that he or she may undertake the employment and he or she or a lawyer in her or her firm may testify:
    1. If the testimony will relate solely to an uncontested matter.
    2. If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

time of the hearing of this matter, counsel for the Plaintiffs effectively abandoned this argument, essentially agreeing with the Defendant that the prospect of Messrs. Jander and McDermott being called as material witnesses in this adversary proceeding was slight. Thus, the Court will refrain from disqualifying Rogers & Wells on this basis.

### 2. Adverse Interest.

Second, the Plaintiffs maintain that because Rogers & Wells is a creditor of the Debtors, and therefore stands to benefit monetarily if the Plaintiffs prevail in the underlying transfer avoidance litigation, Rogers & Wells' representation of the Defendant may be materially limited by its own interests, and thus Rogers & Wells should be disqualified under the terms of Connecticut Rule of Professional Conduct 1.7(b). That Rule provides in pertinent part that—

A lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents after consultation.

This Court concludes from the record of this matter that Rogers & Wells "reasonably believes" that its representation of the Defendant will not be adversely affected by its status as a general unsecured creditor of the Debtors' bankruptcy estates, and that the Defendant has consented to this representation "after consultation". Accordingly, Rule 1.7(b) is not violated. More fundamentally though, even if Rule 1.7(b) were offended, the Plaintiffs would have no standing to seek

disqualification. At its heart, this is an issue of potential conflict between the Defendant and its counsel; it produces no economic or tactical disadvantage for the Plaintiffs. This view is further supported by the Official Commentary to Rule 1.7, which provides that the task of—

[r]esolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. . . . Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.

The technical conflict presented by Rogers & Wells' status as a creditor does not "call into question the fair or efficient administration of justice", particularly where informed consent has been given. Thus, the Court will refrain from disqualifying Rogers & Wells on the basis of its technically adverse interest.

### 3. Prior Representation of the Debtors.

Third, the Plaintiffs contend that Rogers & Wells prior representation of the Debtors in connection with the Foothill Loan compels disqualification under Rule 1.9 of the Connecticut Rules of Professional Conduct. That Rule provides in full as follows:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former

---

3. If the testimony will relate solely to the nature and value of the legal services rendered in the case by the lawyer or the law firm of the client.

**(b) Withdrawal as Counsel When the Lawyer Becomes a Witness.**

1. If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or she or a lawyer in the same firm ought to be called as a witness on behalf of the client, he or she shall withdraw from the conduct of the trial and the law firm shall not continue representation in

the trial, except that the lawyer may continue the representation, and he or she or a lawyer in the same firm may testify in the circumstances enumerated in Rule 33(a).

2. If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or she or a lawyer in the same firm may be called as a witness other than on behalf of his or her client, the lawyer may continue the representation until it is apparent that his or her testimony is or may be prejudicial to the client.

client unless the former client consents after consultation; or

(2) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

As noted in the Court's recital of the relevant facts, it is undisputed that lawyers at Rogers & Wells "formerly represented" the Plaintiffs. Therefore, turning first to subsection (1) of the Rule, the Court notes that it is also undisputed or indisputable that Rogers & Wells' current representation of the interests of the Defendant is "materially adverse to the interests of [its] former client"—the Plaintiffs here—and the Plaintiffs have not consented after consultation. Consequently, the focused issue under subsection (1) of Rule 1.9 is whether any of the matters on which Rogers & Wells previously represented the Plaintiffs are "substantially related" to the issues involved in the current adversary proceeding.

■■■ The Court finds that there is a substantial relationship between the prior representation of the Debtor–Plaintiffs and the current representation of the Defendant. Although the precise factual scenario presented here is apparently without precedent among reported cases, a strikingly similar scenario was encountered by Chief Bankruptcy Judge Steven W. Rhodes of the Eastern District of Michigan, in the case of *Nathan v. Shea (In re Marks & Goergens, Inc.)*, 199 B.R. 922 (1996). In that case, like this one -

(i) the underlying adversary proceeding sought the avoidance and recovery of preferential transfers, *inter alia;*

(ii) the plaintiff was the debtor's bankruptcy estate fiduciary;

(iii) the defendants were the shareholders of the debtor in the relevant time frame; and

(iv) the plaintiff sought to have the defendants' attorneys disqualified on the ground that they had previously represented the debtor in connection with a pre-petition transaction out of the proceeds of which the challenged transfers arose.

Although the precursor transaction in *Nathan* was the sale of the debtor's business to a third party, for purposes of this disqualification matter, the Court views that sale as functionally akin to the Foothill Loan, in that each transaction brought funds into the estate of the debtor which were then allegedly paid to or for the benefit of the Defendants as contemplated at the time of the sale or loan.

Under these parallel circumstances the *Nathan* court had no trouble finding that the subject law firm's current representation of the defendant was "substantially related" to its prior representation of the debtor. In so ruling, the Court found that "facts relevant to the prior representation will be pertinent evidence in the present action. If permitted to represent the [defendants], [the law firm] would have an unfair advantage over the trustee because of the information in its possession from the prior representation." 199 B.R. at 925. This Court concurs fully with that analysis.[2]

The Defendant argues, however, that this Court need not reach the question of the relatedness of the two representations because, at the time the Debtors were represented by Rogers & Wells, they had no legitimate expectation of confidentiality vis-a-vis their corporate parent—the present Defendant. In support of this notion the Defen-

---

**2.** This Court recognizes that the Connecticut Supreme Court has articulated standards under Rule 1.9 which arguably differ from those utilized in *Nathan*, requiring a very narrow construction of the phrase "substantially related". *See Bergeron v. Mackler*, 225 Conn. 391, 399–400, 623 A.2d 489, 493–94 (1993) (requiring that relationship between the prior and present issues be "patently clear"). In the instant case, the Court believes that the relationship between the issues involved in Rogers & Wells' prior representation of the Debtors and its present representation of the Defendant is "patently clear". Nonetheless, even if that relationship were not "patently clear", this Court would not alter the conclusion of this Memorandum of Decision because state law interpretations of the Connecticut Rules of Professional Conduct are not binding on Connecticut federal courts. *See* Local District Court Rule 3(a)1 (expressing District Court's insistence that federal courts develop their own ethical authorities under Local District Court Rules and the Connecticut Rules of Professional Conduct).

dant cites this Court to the case of *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977). Yet, as recently observed by Senior United States District Judge Warren W. Eginton in his opinion in *Prisco v. Westgate Entertainment, Inc.*, 799 F.Supp. 266 (1992), *Allegaert* is not controlling authority in this District because it established precedent only under Canon 4 of the ABA Code of Professional Responsibility. That Canon embodied a general rule of *confidentiality*, namely that a "lawyer should preserve the confidences and secrets of a client." By contrast, in this case the controlling tenets of law are found in the Connecticut Rules of Professional Conduct. Like the ABA Code of Professional Responsibility, the Connecticut Rules of Professional Conduct specifically address confidentiality, but do so at Rule 1.6,[3] not Rule 1.9. Rule 1.9 instead embodies a broader concept—that of continuing fidelity to a former client—a duty of loyalty. Although matters of confidence are an important component of the duty of loyalty, the scope of Rule 1.9 is not limited to, and its application does not turn on, the potential for disclosure of specific matters of confidence. The Rule is prophylactic in nature; it is designed to enforce a broad duty of loyalty and maintain public confidence in the legal system. *See Prisco*, 799 F.Supp. at 271 (citing authorities).

■ In short, a party seeking to disqualify counsel under Rule 1.9(1) need not prove that specific information was communicated to counsel, *and/or that the party had at that time an expectation of confidentiality*. Rather, it is sufficient to show a substantial relationship between the nature of the prior and current representations.

■ Rogers & Wells' representation of the Defendant appears to offend subsection (2) of Rule 1.9 as well. That subsection does not require a substantial relationship between the former and current representation. It recognizes that Rule 1.9's duty of loyalty embraces the sanctity of *all* information obtained in the course of representation, even if that information is not consciously and intentionally communicated to the attorney. This

type of information—actively or passively obtained—can be knowingly, or even unknowingly, utilized by counsel to the disadvantage of its former client.

When counsel is engaged, it is given privileged entry into the private world of the client; and in that privileged role counsel becomes privy to potentially innumerable observations, impressions, etc., which are not generally known. It is unseemly, and contrary to the duty of loyalty, for counsel to be in a position to utilize these observations and impressions to the litigation disadvantage of its former client by, for example, exploiting witnesses' known weaknesses. Subsection (2) of Rule 1.9 honors and enforces this aspect of the duty of loyalty.

### C. Prejudice to the Defendant.

■ This Court is not unmindful of its duty to "be solicitous of a client's right freely to choose ... counsel." *Government of India v. Cook*, 569 F.2d 737, 739 (2d Cir.1978). Yet, at a minimum, that right "must be balanced against the need to maintain the highest standards of the profession." *Id.* Indeed, in a civil case such as this, it is "more important that unethical conduct be prevented than that [a party] have an unfettered right to counsel of its choice". *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir.1984), *cited with approval in, Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.1984).

■ The instant disqualification matter has been brought to the Court's attention at an early stage in this adversary proceeding. Thus the prejudice to the Defendant in a transition to replacement counsel is relatively slight, and has not weighed as heavily as a factor in the Court's analysis as it might had the matter been interposed at a more advanced stage of the proceedings.

### V. CONCLUSION

In light of the foregoing, the Court will grant the motion of the Plaintiffs to disqualify the law firm of Rogers & Wells from

---

**3.** Rule 1.6 provides in pertinent part as follows: (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized [and] in order to carry out the representation. . . .

representing the Defendant in the instant adversary proceeding.  Consistent with that ruling, the Court shall sustain the objections of the Plaintiffs to the admission of Rogers & Wells attorneys as visiting lawyers in this Court for the instant adversary proceeding. Appropriate written orders shall enter this day.