*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DARVIN D. COLE,

      Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 362252
Jackson Circuit Court
LC No. 21-002377-FC

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant, Darvin Cole, appeals by right his convictions of voluntary manslaughter, MCL 750.321; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On August 6, 2021, Cole shot Scotty Charles dead. The day before the shooting, Charles, with the aid of his girlfriend, took Cole's truck without permission. After locating his truck, Cole coerced a friend to drive him to Charles's home so that he could confront him. Cole's friend testified that Cole convinced her to drive him by putting a gun wrapped in a hooded sweatshirt to her head. He put the gun in the backseat on the drive to Charles's home. When they arrived, Cole took the gun from the backseat, banged on the door, and demanded the return of his truck keys. Charles shouted something from inside. In response, Cole walked over to his truck and placed the gun in his truck after removing the sweatshirt. He stayed near to the truck as Charles exited his home, breaking the glass on the storm door in the process. While Charles was coming toward him holding a candlestick, Cole shot Charles with the gun he had brought. Charles fell to the ground and said that he was sorry. Cole responded by closing the distance between himself and Charles and kicking Charles in the head. Subsequently, after trying unsuccessfully to retrieve his truck keys from Charles's girlfriend, Cole got in his friend's vehicle and they left together. At Cole's request, his friend pulled over so that he could dispose of the gun and they both changed their telephone numbers. Eventually, the police located both Cole and his friend.

-1-

According to Cole, he was acting in self-defense when he shot Charles. In support of this claim, he presented testimony showing that Charles, who was much larger than him, had approached him with a candlestick. Further, he presented testimony showing that he was aware that Charles had a reputation for being a man of violence and detailing specific instances that he was aware of. Charles's ex-wife, however, testified that before the shooting, Charles had told her that he was afraid that Cole was going to kill him. He told her that Cole had chased him around town in another vehicle, had rammed his vehicle, and had thrown a crowbar out of a window of a vehicle. He also told her that Cole had previously shot someone. Finally, at trial, the prosecution presented other-acts testimony from Jeffery Loftis, who testified that Cole had shot him in the leg after he had had a dispute with Cole's sister over missing property.

## II. OTHER-ACTS EVIDENCE

## A. STANDARD OF REVIEW

Cole argues that the trial court abused its discretion by admitting evidence that he shot Loftis in the leg. "We review for an abuse of discretion a trial court's decision to admit or exclude evidence." *People v Herndon*, 246 Mich App 371, 406; 633 NW2d 376 (2001). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Olney*, 327 Mich App 319, 325; 933 NW2d 744 (2019) (quotation marks and citation omitted).

## B. ANALYSIS

At the time relevant to this case, MRE 404(b)[1] provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence is admissible under MRE 404(b) if (1) it is offered for a proper purpose, (2) it is relevant, and (3) its probative value is not substantially outweighed by unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). Moreover, upon request, the trial court should provide a limiting instruction. *Id*.

"Under the first prong of the *VanderVliet* test, the question is whether the prosecution has articulated a proper noncharacter purpose for the admission of the other-acts evidence." *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017). Here, Cole argued that he shot Charles in

---

[1] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). References to the rules of evidence in this opinion are to the version in effect at the time the court made its evidentiary decisions.

self-defense. The prosecution proffered the other-acts evidence to rebut that claim by showing that Cole intended to kill Charles when he shot him and that he was not acting in self-defense. Additionally, the prosecution argued that the evidence was relevant to show that Cole had a common scheme, plan, or system. It is permissible to admit other-acts evidence to disprove self-defense or to show that the defendant was acting pursuant to a common scheme, plan, or system.

On appeal, Cole argues that the prosecution merely recited a proper purpose for the other-acts evidence without explaining how the evidence related to the proper purpose. As explained in *Denson*, the mere articulation of a proper purpose is insufficient to justify admission under MRE 404(b). *Denson*, 500 Mich at 400. Rather, there must be an explanation as to "how the evidence relates to the recited purpose." *Id*. We disagree.

In evaluating whether the prosecution has provided an intermediate inference other than an impermissible character inference, this Court examines the similarity between a defendant's other act and the charged offense. *Id*. at 402. "The degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence." *Id*. at 402-403. Here, one proffered purpose for the other-acts evidence was to prove that Cole acted pursuant to a common scheme, plan, or system.

Evidence of misconduct similar to that charged is logically relevant to show that the charged act occurred if the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they were manifestations of a common plan, scheme, or system. *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). A "general similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts," but "logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot . . . ." *People v Dobek*, 274 Mich App 58, 90; 732 NW2d 546 (2007) (quotation marks, citation, and alterations omitted). "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009).

On appeal, Cole argues that the other-acts evidence was not *strikingly* similar to the charged offense because the other act involved a victim of a different type and because the similarities did not satisfy the strikingly similar threshold. In *Denson*, 500 Mich at 401, the Supreme Court determined that the defenses including self-defense and defense of others were generally at issue; however, because the other-acts evidence was not probative of the defenses, the evidence was not material and, therefore, inadmissible. To determine the other-acts evidence's probative value, the Court examined the similarity between the defendant's other act and the charged offense and determined that the prosecution sought to admit the other-acts evidence on the basis of the alleged similarities between the other act and the charged offense. *Id*. at 402. Referring to *VanderVliet*, 444 Mich at 67, the Supreme Court held that striking similarity between the two acts was required if the prosecution creates a theory of relevance on the basis of alleged similarity. *Denson*, 500 Mich at 403.

In this case, the Loftis shooting was indeed strikingly similar to the charged offense to support an inference that they were part of a common scheme or plan and to negate a finding of self-defense. The Loftis shooting occurred as a result of a dispute over property. The shooting in

this case also arose from a property dispute, i.e., from Charles and his girlfriend stealing Cole's truck. In response to both property disputes, Cole travelled to the residence of the individual he was having a dispute with and he brought a shotgun both times. When he arrived, he engaged in a verbal dispute. And, when both Loftis and Charles emerged from their residences, Cole shot them with the gun that he had brought with him. The similarities between the two events allow for a reasonable inference that Cole brought the gun so that he could shoot Charles during the dispute. Such an inference would negate Cole's argument that he was acting in self-defense when he brought a shotgun to Charles's residence and shot him dead when Charles approached him following a verbal altercation.

Moreover, the danger of unfair prejudice does not substantially outweigh the probative value of the other-acts evidence. See *VanderVliet*, 444 Mich at 74-75. Other-acts evidence is unfairly prejudicial if it presents a danger that marginally probative evidence will be given undue or preemptive weight by the jury or "it would be inequitable to allow use of the evidence." *People v Waclawski*, 286 Mich App 634, 672; 780 NW2d 321 (2009). Here, the probative value of the evidence was substantial—it was used to show that Cole was acting pursuant to a common plan, or scheme and that he was not acting in self-defense when he travelled to Charles's residence with a shotgun, banged on the door and yelled at him to entice him to come outside, and then set himself into a position where he could shoot Charles after he left the residence and approached him. Additionally, the trial court properly provided a cautionary instruction during the final jury instructions, advising the jury on the limited use of the other-acts evidence, which mitigated any potential for unfair prejudice because jurors are presumed to follow their instructions. See *People v Ericksen*, 288 Mich App 192, 199-200; 793 NW2d 120 (2010).[2]

On this record, the trial court did not abuse its discretion by admitting the other-acts evidence.

## III. CONFLICT OF INTEREST

### A. STANDARD OF REVIEW

Cole argues that the trial court's erroneous admission of the evidence regarding his previous shooting created a conflict of interest because his lawyer previously represented Loftis as a witness against Cole in the previous shooting. Whether a conflict of interest exists is question of fact. *Camden v Kaufman*, 240 Mich App 389, 399; 613 NW2d 335 (2000). Cole further asserts that the conflict of interest violated his Sixth Amendment right to counsel. Whether a defendant's

---

[2] We conclude that, to the extent that the trial court admitted the other-acts evidence to prove motive or lack of accident, the trial court abused its discretion. Cole's theory at trial was self-defense, not accident. Moreover, evidence that he was "motivated" to shoot people with whom he had a property dispute is relevant only for propensity purposes. Such errors, however, do not mandate reversal because the other-acts evidence was properly admitted to prove Cole acted pursuant to a common plan, scheme, or system and to negate evidence that he was acting in self-defense.

Sixth Amendment right to counsel was violated is a constitutional question that we review de novo. See *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008).

## B. ANALYSIS

The Sixth Amendment right to counsel encompasses the right to have a lawyer who is not "burdened by an actual conflict of interest." *Strickland v Washington*, 466 US 668, 692; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks and citation omitted). A defendant must establish that an actual conflict of interest adversely affected his lawyer's performance to prevail on a claim that a conflict of interest violated his Sixth Amendment rights. *Cuyler v Sullivan*, 446 US 335, 348; 100 S Ct 1708; 64 L Ed 2d 333 (1980); *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998). A lawyer's bias against his or her own client can amount to ineffective assistance, if the lawyer acts on the bias to the defendant's detriment. *People v Gioglio (On Remand)*, 296 Mich App 12, 25; 815 NW2d 589 (2012), vacated not in relevant part, 493 Mich 864 (2012). Prejudice is presumed when the lawyer is burdened by an actual conflict of interest because counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. *Strickland*, 466 US at 692. It is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. *Id*. However, prejudice is presumed only if the defendant demonstrates that his or her lawyer "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 US at 350. "Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict . . . ." *Id*. at 346-347.

In this case, the prosecution raised concerns with Cole's lawyer because she was made aware that Cole's lawyer had represented Loftis at a preliminary examination related to Cole shooting Loftis in the leg. At that hearing, Loftis denied that Cole was the individual by whom he had been shot. The prosecution argued that because Loftis was Cole's lawyer's former client, he could not cross-examine Loftis because he would be cross-examining him for the same situation for which he had previously represented Loftis. The prosecution stated that she was not concerned with prejudice to Cole because she believed that his lawyer would still effectively cross-examine Loftis; instead, she was concerned with Loftis's right not to be cross-examined by his former lawyer. The prosecutor stated that Loftis, when informed about the conflict, declined to waive it. The prosecutor added that the entire public defender's office should be excluded from cross-examining Loftis and that the only option would be to appoint a separate lawyer for the cross-examination.

In response, Cole's lawyer asserted that Cole and Loftis were not averse to one another and that they had been in communication in jail and that the easiest resolution for the issue was to deny Loftis from testifying. He also asserted that, under MRPC 1.9, he was not representing an adverse interest because Loftis had been given immunity from perjury charges associated with his testimony at the preliminary examination. The record reflects that during the preliminary examination, the trial court had stopped Loftis from testifying and appointed a lawyer from the public defender's office to represent him. Loftis then spoke with the lawyer and, after consultation, the lawyer informed the court that Loftis was exercising his Fifth Amendment right not to testify.

There is a presumption that, during representation, a client discloses potentially damaging confidences to his or her lawyer. *People v Waterstone (On Remand)*, 287 Mich App 368, 381; 789 NW2d 669 (2010), rev'd on other grounds 486 Mich 942 (2010). This presumption is also indicated in MRPC 1.6, which provides, in part, "where lawyers are duty bound to maintain confidentiality, clients are advised to communicate 'fully and frankly' with the lawyer, even if the information is damaging or embarrassing." *Id.* "Further, an attorney has a duty of confidentiality that involves all confidential information, whether privileged or unprivileged, and whether learned directly from the client or from another source." *Id.* (quotation marks and citation omitted). Therefore, "an attorney owes allegiance to his or her client and generally may not represent parties on both sides of a dispute." *Id.* at 382.

In a civil case analyzing a conflict of interest with a former client, this Court referred to a three-part test used to examine whether adverse subsequent representation may be deemed substantially related to legal services done for a former client. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 605; 792 NW2d 344 (2010). The test set forth three questions:

> 1. What is the nature and scope of the prior representation at issue?
>
> 2. What is the nature of the present lawsuit against the former client?
>
> 3. In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in current litigation? [*Id.*]

This Court explained "that the court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Id.* at 605-606. Instead, substantially related information may have been acquired

> if (a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such a character that it would not have been unusual for it to have been discussed between the lawyer and client during their relationship. [*Id.* at 606 (quotation marks and citation omitted).]

In this case, it would be hard to imagine that Cole's lawyer did not discuss the particular facts of Cole's previous shooting during his representation of Loftis and the particular facts of Cole's previous shooting was the only issue during Cole's lawyer's cross-examination of Loftis. Accordingly, this case fails the three-part test identified in *Alpha Capital*.

Once a court determines that a substantial relationship exists, as in this case, "a presumption is created that the attorney will use information received from the former client in the ethical obligation to vigorously represent the present client, thus violating the ethical obligations of loyalty and confidence." *In re Marks & Goergens, Inc*, 199 BR 922, 924-925 (1996). A substantial relationship exists "if there are common factual questions, i.e., if facts pertinent to problems for which the original legal services were sought are relevant to the subsequent

litigation." *Id*. at 925 (quotation marks and citations omitted). "This presumption is generally not rebuttable." *Id*.

Accordingly, although Cole's lawyer denied that he obtained confidential information during his representation of Loftis, the MRPC and caselaw support that it did not matter. Indeed, Loftis was granted immunity from perjury for his previous testimony that occurred during Cole's lawyer's representation of Loftis in exchange for his testimony against Cole. Accordingly, Loftis's interest in obtaining guaranteed immunity was averse to Cole's interest in not having Loftis testify against him. Therefore, the trial court erred by determining that a conflict of interest did not exist.

Our Supreme Court has held that prejudice is presumed only if the actual conflict of interest adversely affected the lawyer's performance. *Smith*, 456 Mich at 557, citing *Cuyler*, 446 US at 348-350. Therefore, an actual conflict of interest may not fall into the category of errors that seriously affects the fairness, integrity, or public reputation of judicial proceedings and may not require automatic reversal. See *In re Osborne (On Remand)*, 237 Mich App 597, 601-602; 603 NW2d 824 (1999). Here, Cole failed to establish that Loftis could have or should have been precluded from testifying. To the contrary, the testimony offered by Loftis was admissible. Further, there was no indication that the testimony from Loftis was improperly influenced by Cole's lawyer's representation of Cole. Additionally, had the trial court disqualified Cole's lawyer from continued representation of Cole, there was no indication that Loftis would have not testified or testified differently at trial if cross-examined by a different lawyer.

The record of pretrial motions and briefs, objections, and involvement in complex trial strategy supported that the lawyers for Cole zealously advocated for him. He cross-examined Loftis regarding his previous perjured testimony and the immunity agreement that prompted Loftis to testify against Cole. On appeal, Cole argues that his lawyer should have questioned Loftis regarding additional specific details, including the reason why the shooting occurred, if Cole had struck Loftis in the head with the gun, and regarding the inconsistencies with Loftis's initial statements to the police versus his trial testimony on direct-examination. However, the record is devoid of any explanation of why Cole's lawyer limited his cross-examination because Cole did not properly preserve the issue. "To warrant reversal, the prejudice shown must be actual, not merely speculative." *People v Fowlkes*, 130 Mich App 828, 836; 345 NW2d 629 (1983). Further, "[t]his Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Cole's lawyer maintained that he had no memory of his representation of Loftis and that he did not obtain any confidential information that would have impacted his subsequent representation of defendant. Throughout pretrial proceedings and the trial, Cole's lawyer actively attempted to prevent Loftis from testifying to benefit Cole and then he managed to limit the testimony as much as possible once the evidence was deemed admissible. Further, this strategy may have been successful on the basis of the jury's verdict of voluntary manslaughter instead of first- or second-degree murder for which the Loftis testimony was admitted to help prove. Accordingly, Cole's lawyer's performance was not adversely affected by the conflict of interest and Cole's Sixth Amendment right to counsel was not violated.

## IV. HEARSAY

Cole argues that Charles's out-of-court statements made to his ex-wife were inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Generally, hearsay is not admissible at trial. MRE 802. However, MRE 803(3) provides an exception to the exclusion of hearsay evidence for statements concerning a declarant's "[t]hen existing mental, emotional, or physical condition." As this Court has explained:

> Statements of mental, emotional, and physical condition, offered to prove the truth of the statements, have been recognized as an exception to the hearsay rule because special reliability is provided by the spontaneous quality of the declarations when the declaration describes a condition presently existing at the time of the statement. [*People v Moorer*, 262 Mich App 64, 68-69; 683 NW2d 736 (2004).]

"[T]heir spontaneity and resulting probable sincerity" provides the special assurance of reliability. *Id*. at 69. A proper analysis under MRE 803(3) "requires that the nature of each statement be considered specifically, as well as the purpose for each statement's admission." *People v Smelley*, 285 Mich App 314, 324; 775 NW2d 350 (2009), vacated not in relevant part 485 Mich 1023 (2010).

In criminal cases, statements used to prove a declarant's state of mind include statements of ill will by the defendant toward the victim to show malice and statements by a victim that he or she was afraid of the defendant to rebut a self-defense theory. See *People v White*, 401 Mich 482, 504-505; 257 NW2d 912 (1977), overruled on other grounds *People v Koonce*, 466 Mich 515 (2002). In *People v Ortiz*, 249 Mich App 297, 310; 642 NW2d 417 (2001), this Court determined that statements regarding the victim's plans to end their marriage and the tension between the victim and the defendant, as well as statements regarding the victim's fear of defendant were admissible pursuant to MRE 803(3). In *Ortiz*, the defendant was convicted of first-degree, premeditated murder of his ex-wife. *Id*. at 300. The trial court admitted statements made by the victim including statements that

> the victim was afraid of defendant, that she thought defendant was stalking her, that defendant physically assaulted her, that defendant threatened to kill her, that defendant threatened to kill her in such a manner that no one would find out that he did it, that defendant warned the victim that her life was like the O.J. Simpson story, that the victim was changing her will, that the victim anticipated her death, that the victim was going to try to enforce the child support order, that the victim did not want to get back together with defendant, that the victim made arrangements to be away from home on the weekend of July 4, 1998, specifically because she did not want to be around when defendant came to her home to pick up his Grand Am, and that after defendant broke into her house in October 1998, she changed the locks. [*Id*. at 307.]

The statements were relevant to numerous issues in the case including motive, deliberation, premeditation, and whether the victim had engaged in consensual sexual relations with the defendant before her death. *Id*. at 310. Evidence of the victim's plans including the ending of her

marriage and the tension between the victim and defendant were determined to be demonstrative of the defendant's motive and evidence of the victim's fear of the defendant were also deemed admissible. *Id.*

In this case, Charles's ex-wife testified that on August 4, 2021, Charles came to her home and, during a conversation, he began crying and told her "that somebody was after him and that somebody was going to kill him." He identified Cole as the person who was going to kill him. Charles's ex-wife explained that Charles did not typically cry. Regarding the conversation, she testified:

> He said that a deal had gone down over a camper, and it went bad and I can't remember the—the specifics of it, but [Cole] had a—was—was chasing him around town, was the exact phrase that he used. He was chasing him around town in another vehicle, ramming his truck and he threw a crowbar threw [sic] a window of a—a vehicle he was driving and that he was telling everybody in town that he was going to kill [the victim].
>
> * * *
>
> . . . He also said that—he also said that [Cole] had shot somebody previously and so it wouldn't be—it wouldn't—the words he used were that it wouldn't be—he wouldn't put it by him to shoot him too.

Charles's ex-wife believed that this was why Charles was scared. She confirmed that Charles had a reputation for violence and for being an aggressor. She stated that Charles was not the aggressor in the charged offense and that he told her that if something happened to him that it was Cole who did it.

Although Cole and Charles did not share a domestic partnership similar to the parties in *Ortiz*, the statements were admissible. Cole asserted that he shot Charles in self-defense. That assertion of self-defense caused the victim's state of mind to be an issue because:

> [w]hen such claims are made by the defendant it would be highly relevant for the prosecution to show that at or near the time of the decedent's death he said something which tends to prove circumstantially that he feared the defendant, as suggesting it was unlikely that he was an aggressor . . . or as tending to disprove accidental death. [*White*, 401 Mich at 504.]

Further, regardless of Cole's asserted self-defense, the statements were admissible to show the escalating tension between Cole and Charles, the fear that Charles had for Cole, and the motive that Cole may have had to kill Charles.

Regardless, even if the trial court erred by admitting the out-of-court statements, reversal is not required. "Evidentiary error will not merit reversal unless it involves a substantial right and after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). The admission of the improper statements could be deemed prejudicial because of the

risk that the "jury would accept [the victim's] statement[s] as somehow reflecting on defendant's state of mind rather than [the victim's], i.e., as a true indication of the defendant's intentions, actions, or culpability." *White*, 401 Mich at 505. However, other evidence was presented of Cole's intentions and culpability, including testimony regarding the ongoing property disputes; Cole's anger with Charles for using his truck; and previous hostile confrontations between Cole and Charles. Further, the other-acts evidence allowed for an inference that Cole had acted pursuant to a common plan, scheme, or system when he arrived with a gun and shot Charles. Statements relating to Charles's belief that Cole may have intended to harm him were cumulative to properly admitted evidence that showed the escalation of hostility, which permitted the jury to infer that their relationship was becoming dangerous. Accordingly, even if the evidence was inadmissible, Cole has failed to show that their admission was outcome-determinative.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray