ON REMAND, AFTER REMAND
 

 Before: Markey, P.J., and Griffin and Whitbeck, JJ.
 

 Griffin, J.
 

 This case involving the termination of parental rights returns to us following a Supreme Court opinion that vacated our prior decision and directed a remand of the case to the circuit court for an evidentiary hearing.
 
 In re Osborne,
 
 459 Mich 360; 589 NW2d 763 (1999). At the conclusion of the hearing, the circuit court found no prejudice resulting from the conflict of interest of petitioner’s attorney and reinstated the order terminating respondent’s parental rights to her minor child. We affirm.
 

 i
 

 During the course of the neglect proceedings that involved numerous hearings that spanned a three-year period and culminated in the termination of her parental rights, respondent was represented by five different court-appointed attorneys. Correspondingly, petitioner was represented by three different assistant prosecuting attorneys. One of respondent’s attorneys was Kevin Wistrom, who represented respondent at a review hearing on August 22, 1995. During the hearing, Mr. Wistrom conducted a direct examination of Ms. Osborne and cross-examined two other witnesses. Approximately one year later, Mr. Wistrom, then a Muskegon County assistant prosecutor, repre
 
 *600
 
 sented petitioner against his former client during a three-day permanent wardship trial.
 

 In our prior decision,
 
 In re Osborne,
 
 230 Mich App 712, 716-717; 584 NW2d 649 (1998), we held, inter alia, “that where the right to court-appointed counsel exists, there is a correlative right to representation that is free from conflicts of interest.” In so holding, we quoted
 
 Strickland v Washington,
 
 466 US 668, 692; 104 S Ct 2052; 80 L Ed 2d 674 (1984):
 

 “In
 
 Cuyler v Sullivan
 
 [446 US 335, 345-350; 100 S Ct 1708; 64 L Ed 2d 333 (1980)], the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel’s duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts ... it is reasonable for the criminal justice system to maintain a fairly rigid rale of presumed prejudice for conflicts of interest. . . . Prejudice is presumed only if the defendant demonstrates that counsel ‘actively represented conflicting interests’ and that ‘an actual conflict of interest adversely affected his lawyer’s performance.’
 
 Cuyler v Sullivan, supra,
 
 446 US [350, 348] (footnote omitted.).”
 
 [In re Osborne, supra
 
 at 230 Mich App 717.]
 

 Further, we held that although the ethical violation may have been unintended, Mr. Wistrom’s prosecution of his former client in the same proceeding violated the Michigan Rules of Professional Conduct, MRPC 1.11(c)(1) and MRPC 1.9(a).
 
 [1]
 
 We acknowledged the
 
 *601
 
 position of the petitioner that there was no record evidence that Mr. Wistrom was aware of his actual conflict of interest and no evidence to prove that Mr. Wistrom relied on any privileged information obtained from his former client. Nonetheless, relying in part on
 
 People v Grant,
 
 445 Mich 535, 553; 520 NW2d 123 (1994),
 
 [2]
 
 we held that although respondent’s fifth court-appointed attorney made no objection regarding the conflict of interest, the error was plain
 
 [3]
 
 and warranted reversal irrespective of actual prejudice.
 

 In vacating our decision and remanding for an evidentiary hearing, the Supreme Court stated, “The existing record does not persuade us that this case must be retried.”
 
 In re Osborne, supra
 
 at 459 Mich 369. In directing a remand for an evidentiary hearing, the Supreme Court apparently wanted a record on the issue whether respondent sustained actual prejudice and, if so, the extent of involvement of the prosecutor’s office. Because the Supreme Court was not persuaded that a retrial was required on the basis of the prior record, the Court implicitly determined that Mr. Wistrom’s actual conflict of interest did
 
 not
 
 fall into the category of errors that “ ‘seriously’ affects the fair
 
 *602
 
 ness, integrity, or public reputation of judicial proceedings,” errors that would compel automatic reversal.
 
 Grant, supra
 
 at 549-550. See also
 
 People v Cannes,
 
 460 Mich 750, 763-764; 597 NW2d 130 (1999).
 

 After the remand, the Muskegon Circuit Court, Family Division, held an evidentiary hearing. At the commencement of the hearing, respondent’s current court-appointed attorney, Shon A. Cook, orally moved to withdraw from the case claiming a breakdown in the attorney-client relationship as evidenced by the absence of any contact by her with her client for almost two years. Ms. Cook stated, “I haven’t had any opportunity to discuss her appeal or any aspect of this case with her [Ms. Osborne].” The sole witness called was Kevin Wistrom, who testified that during the three-day permanent wardship trial, he did not recall his prior representation of respondent, his direct examination of her, or obtaining any information from her. Following the conclusion of Mr. Wistrom’s “no recollection” testimony, both petitioner and respondent’s counsel advised the court that no further witnesses would be called. This resulted in the following protestation by respondent:
 

 Dyphine Osborne:
 
 I don’t get to say anything at any of these hearings, at the end of them or anything.
 

 The Court:
 
 Well, um, ....
 

 Dyphine Osborm:
 
 Do you know something, I want, you know, why don’t you just file for a grand Jury or something, if we’re having this many problems.
 

 The Court:
 
 Okay, the hearing is closed then at this time.
 

 In its order on remand, the circuit court found no prejudice resulting from the conflict of interest of Mr. Winstrom. The order provides that Mr. Wistrom (who
 
 *603
 
 is no longer with the Muskegon prosecutor’s office) “is disqualified from further representation of any party in this matter;” however, the Muskegon prosecutor’s office is not disqualified in the representation of the Family Independence Agency because of the disqualification of Mr. Wistrom. Finally, the circuit court reaffirmed the previous order terminating the parental rights of respondent to her minor child.
 

 Although we are troubled by the apparent ineptitude of respondent’s court-appointed attorneys, the factual findings made by the trial judge following the evidentiary hearing are not clearly erroneous and are therefore affirmed. MCR 2.613(C), 5.974(1). In addition, because the Supreme Court previously stated that “[t]he existing record does not persuade us that this case must be retried,” 459 Mich 369, we believe that the Supreme Court has concluded that a plain error regarding a conflict of interest of counsel falls within the category of error for which prejudice must be proved before reversal may be ordered. In the present case, because actual prejudice has not been demonstrated, we will not reverse on the basis of plain error.
 

 n
 

 However, for the reasons expressed below, we urge the Supreme Court to reconsider the issue. Were we permitted, we would hold that the present actual conflict of interest of petitioner’s counsel falls within the category of plain error that seriously affects the structural fairness, integrity, or reputation of the judicial proceeding and thus compels reversal despite the lack of demonstrable prejudice.
 

 
 *604
 
 In
 
 Grant, supra
 
 at 549-550, our Supreme Court adopted the following standard from
 
 United States v Olano,
 
 507 US 725, 736; 113 S Ct 1770; 123 L Ed 2d 508 (1993), for evaluating nonconstitutional, plain error:
 

 [T]he
 
 Olano
 
 majority provided a separate test for reversal: a federal appellate court may reverse a plain forfeited error (1) where a miscarriage of justice would result because the defendant is actually innocent or (2) if the error “seriously affects” the fairness, integrity, or public reputation of judicial proceedings.
 
 Id.,
 
 123 L Ed 2d 521.
 

 In regard to the related doctrine of harmless error, the United States Supreme Court in
 
 Arizona v Fulminante,
 
 499 US 279, 308-310; 111 S Ct 1246; 113 L Ed 2d 302 (1991) (opinion by Rehnquist, C.J.), explained the distinction between a constitutional “trial error” and a “structural defect” error that seriously affects the fundamental fairness, integrity, or public reputation of the judicial proceeding:
 

 In
 
 Chapman v California,
 
 [386 US 18, 23; 87 S Ct 824; 17 L Ed 2d 705 (1967)], the Court stated:
 

 “Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement in
 
 Fahy [v Connecticut,
 
 375 US 85; 84 S Ct 229; 11 L Ed 2d 171 (1963)] itself belies any belief that all trial errors which violate the Constitution automatically call for reversal.”
 

 The admission of an involuntary confession—a classic “trial error”—is markedly different from the other two constitutional violations referred to in the
 
 Chapman
 
 footnote as not being subject to harmless-error analysis. One of those violations, involved in
 
 Gideon v Wainwright,
 
 372 US
 
 *605
 
 335 [83 S Ct 792; 9 L Ed 2d 799] (1963), was the total deprivation of the right to counsel at trial. The other violation, involved in
 
 Tumey v Ohio,
 
 273 US 510 [47 S Ct 437; 71 L Ed 749] (1927), was a judge who was not impartial. These are structural defects in the constitution of the trial mechanism, which defy analysis by “harmless-error” standards. The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of a judge who is not impartial. Since our decision in
 
 Chapman,
 
 other cases have added to the category of constitutional errors which are not subject to harmless error the following: unlawful exclusion of members of the defendant’s race from a grand jury,
 
 Vasquez v Hillery,
 
 474 US 254 [106 S Ct 617; 88 L Ed 2d 598] (1986); the right to self-representation at trial,
 
 McKaskle v Wiggins,
 
 465 US 168, 177-178, n 8 [104 S Ct 944; 79 L Ed 2d 122] (1984); and the right to public trial,
 
 Waller v Georgia,
 
 467 US 39, 49, n 9 [104 S Ct 2210; 81 L Ed 2d 31] (1984).
 
 Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. “Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.
 
 ”
 
 Rose v Clark,
 
 478 US [570], at 577-578 [106 S Ct 3101; 92 L Ed 2d 460] (1986) (citation omitted). [Emphasis added.]
 

 See also
 
 Neder v United States,
 
 527 US _; 119 S Ct 1827; 144 L Ed 2d 35, 46 (1999) (“[W]e have found an error to be ‘structural,’ and thus subject to automatic reversal, only in a ‘very limited class of cases.’ ”).
 

 In
 
 People v Anderson (After Remand),
 
 446 Mich 392, 404-407; 521 NW2d 538 (1994), the trial error/structural defect dichotomy was adopted and applied by our Supreme Court. See also
 
 Carines, supra.
 

 
 *606
 
 In proceedings to terminate parental rights, indigent respondents are afforded the right to court-appointed counsel by both our statutes, MCL 712A.17c(5); MSA 27.3178(598.17c)(5), and our court rules, MCR 5.915(B)(1)(b). Although it is unclear whether respondent’s right to court-appointed counsel is guaranteed by the Michigan Constitution,
 
 [4]
 
 in our view, once the right to counsel exists, there is a correlative right to effective representation that is free from actual conflicts of interest.
 
 [5]
 
 Furthermore, in Michigan, plain constitutional error and plain nonconstitutional error are treated similarly.
 
 Carines, supra.
 
 With regard to either type of plain error, “[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant
 
 or
 
 when an error
 
 [4]
 
 “seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings” independent of the defendant’s innocence.’ ”
 
 Id.
 
 at 763-764, quoting
 
 Orlano, supra
 
 at 736-737 (emphasis added).
 

 Recently, the Wisconsin Supreme Court in
 
 State v Love,
 
 227 Wis 2d 60; 594 NW2d 806 (1999), surveyed the state of Sixth Amendment law in cases in which a former prosecutor of a defendant switched sides to represent the defendant. In rejecting a bright-line rule of automatic reversal for such “serial representation,”
 
 [6]
 
 the Wisconsin Supreme Court held:
 

 
 *607
 
 We hold that in order to establish a Sixth Amendment violation on the basis of a conflict of interest in a serial representation case, a defendant who did not raise an objection at trial must demonstrate by clear and convincing evidence that his or her counsel converted a potential conflict of interest into an actual conflict of- interest by (1) knowingly failing to disclose to the defendant or the circuit court before trial the attorney’s former prosecution of the defendant, or (2) representing the defendant in a manner that adversely affected the defendant’s interest.
 
 [Id.
 
 at 82.]
 

 In
 
 Love,
 
 the Wisconsin Supreme Court did not find error requiring reversal because the serial representation was unknowing and the switch from
 
 prosecutor to defense attorney
 
 did not adversely affect the defendant’s interests. Obviously, if the defense counsel used confidential information previously obtained in the prosecution of the defendant, such information would inure to the
 
 benefit, not detriment,
 
 of the defendant. Thus, no prejudice to the defendant, actual or perceived, was found.
 

 The present case is the converse of
 
 Love.
 
 Here, the serial representation was a switch in the same proceeding from defense attorney (attorney for respondent) to prosecutor (attorney for petitioner). Whether prejudice is actual, it is perceived because the attorney who previously shared the trust and confidences of respondent was later prosecuting his former client.
 

 In
 
 Young v United States,
 
 481 US 787; 107 S Ct 2124; 95 L Ed 2d 740 (1987), the district court appointed as prosecutor the attorney for the party who would benefit from a conviction of contempt. In reversing the defendant’s contempt conviction, the United States Supreme Court, in a plurality opinion, stated that the appointment of an interested prosecutor was a structural defect that affected the structural
 
 *608
 
 fairness of the judicial proceeding regardless of actual prejudice:
 

 An error is fundamental if it undermines confidence in the integrity of the criminal proceeding. . . .
 

 [Appointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general. The narrow focus of harmless-error analysis is not sensitive to this underlying concern. ... A concern for actual prejudice in such circumstances misses the point, for what is at stake is the public perception of the integrity of our criminal justice system. “[J]ustice must satisfy the appearance of justice,”
 
 Offutt [v United States,
 
 348 US 11, 14; 75 S Ct 11; 99 L Ed 11 (1954)], and a prosecutor with conflicting loyalties presents the appearance of precisely the opposite. Society’s interest in disinterested prosecution therefore would not be adequately protected by harmless-error analysis, for such analysis would not be sensitive to the fundamental nature of the error committed.
 
 [Young, supra
 
 at 810-812.]
 

 In the context of granting habeas corpus relief in a death penalty case, the United States District Court in
 
 Wilkins v Bowersox,
 
 933 F Supp 1496, 1524 (WD Mo, 1996), held that a serial representation, similar to the present case, in which the defendant’s former attorney switched sides and prosecuted his former client, was a structural defect error:
 

 Beyond a reasonable doubt, the entire conduct of the criminal proceeding was obviously affected by the conflict of interest caused by the prosecutor’s prior representation and his nondisclosure. See
 
 Arizona v Fulminante,
 
 499 US 279, 309; 111 S Ct 1246, 1264-65; 113 L Ed 2d 302 (1991);
 
 Chapman v California,
 
 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).
 

 
 *609
 
 The court explained:
 

 It is well-settled that a fair trial in a fair tribunal is a basic requirement of due process.
 
 In re Murchison,
 
 349 US 133, 136; 75 S Ct 623, 625; 99 L Ed 942 (1955);
 
 Tumey v Ohio,
 
 273 US 510, 523; 47 S Ct 437, 441; 71 L Ed 749 (1927). There is a constitutional violation of due process when an attorney represents a client and then participates in the prosecution of that client in the same matter or another matter with a substantial relationship to the first. See
 
 United States v Schell,
 
 775 F2d 559, 566 (4th Cir, 1985);
 
 United States v Wilson,
 
 497 F2d 602 (8th Cir, 1974);
 
 Smith v Whatcott,
 
 757 F2d 1098 (10th Cir, 1985). “The right to due process and a fair trial include the essential element that there is no unfair advantage to the prosecution by reason of a prior professional relationship between [the prosecutor] and a criminal defendant concerning the same or closely related matter.” See
 
 State v Boyd,
 
 560 SW2d 296 (Mo App, 1977).
 

 . . . The applicable test is that described in
 
 Arkansas v Dean Foods Products Co,
 
 605 F2d 380 (8th Cir, 1979) overruled on other grounds in
 
 In re Multi-Piece Rim Products Liability Litigation,
 
 612 F2d 377, 378 QCA 8] 1980):
 

 “The former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action (where) the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.”
 
 Dean Foods,
 
 605 F2d at 383.
 

 Under the law of this Circuit, “the attorney-client relationship raises an irrefutable presumption that confidences were disclosed.”
 
 Id.
 
 at 384.
 
 [Wilkins, supra
 
 at 1522-1523.]
 

 In this regard, it is well established that “[t]here is a presumption that an attorney receives confidential communications in the course of his representation of a client.”
 
 United States v Shepard,
 
 675 F2d 977, 980
 
 *610
 
 (CA 8, 1982). In the present case, this presumption has not been rebutted by Mr. Wistrom’s “no recollection” testimony. See, generally, MRE 301.
 

 Finally, in
 
 Burkett v State,
 
 131 Ga App 662; 206 SE2d 848 (1974), the- instant issue was squarely addressed in a criminal context by the Georgia Court of Appeals. In holding that a defendant’s criminal conviction must be reversed when the district attorney prosecuting the case had formerly represented the defendant on the same charges, the
 
 Burkett
 
 court stated:
 

 [T]he assistant district attorney, Flythe, had represented the defendant on the same two cases in 1967 for which Flythe was now prosecuting the defendant. . . .
 

 The learned trial judge was eminently correct in declaring Mr. Flythe disqualified, but in our view he did not go far enough. Mr. Flythe was in the position of blowing cold when defending defendant, and blowing hot when prosecuting, all with the same breath. ... As far back as 1852 the Supreme Court held that “public policy forbids that a solicitor general who has prosecuted a defendant for a violation of the law, by preferring an indictment against him, should appear as his counsel to defend him from the charge, after the expiration of his term of office.”
 
 Gaulden v State,
 
 11 Ga 47, 51 [1852]. If that be true, certainly the inverse is all the more true, that of a defense counsel later prosecuting an accused for the same offense against which he had previously defended the accused.
 
 [Burkett, supra
 
 at 663.]
 

 See also anno:
 
 Disqualification of prosecuting attorney in state criminal case on account of relationship with accused,
 
 42 ALR5th 581, and cases cited therein.
 

 Were we permitted, we would hold that the type of serial representation that occurred in the present case falls within the category of plain error that “seriously
 
 *611
 
 affects the fairness, integrity, or public reputation of [the] judicial proceeding,”
 
 Olano, supra; Grant, supra; Carines, supra,
 
 and that reversal is compelled despite the lack of proof of actual prejudice. Were it not for the Supreme Court’s prior ruling, we would reinstate our original decision, reverse the order terminating respondent’s parental rights, and remand for a new trial.
 

 The order terminating respondent’s parental rights is affirmed.
 
 [7]
 

 [1]
 

 The official comment to MRPC 1.9 explains in pertinent part: “The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of
 
 *601
 
 sides in the matter in question.” It is beyond dispute that Mr. Wistrom changed sides without the consent of his former client.
 

 [2]
 

 [A] plain,
 
 unpreserved
 
 error may not be considered by an appellate court for the first time on appeal unless the error could have been decisive of the outcome
 
 or unless it falls under the category of cases, yet to be clearly defined, where prejudice is presumed or reversal is automatic.
 
 [Emphasis in original and added.]
 

 [3]
 

 By definition, plain error is substantial error for which no objection or offer of proof was made. MRE 103(d) provides:
 

 Plain error.
 
 Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.
 

 [4]
 

 See
 
 In re Sanchez,
 
 422 Mich 758; 375 NW2d 353 (1985);
 
 Reist v Bay Circuit Judge,
 
 396 Mich 326; 241 NW2d 55 (1976).
 

 [5]
 

 See, generally,
 
 In re Simon,
 
 171 Mich App 443, 447; 431 NW2d 71 (1988);
 
 In re Trowbridge,
 
 155 Mich App 785; 401 NW2d 65 (1986).
 

 [6]
 

 The Wisconsin Supreme Court defined serial representation as follows: “Serial representation occurs when an attorney represents one party in a case, then switches sides to represent the other party in the same proceeding or in an unrelated case.”
 
 Love, supra
 
 at 73.
 

 [7]
 

 In her supplemental brief after remand, respondent attempts to raise the issue whether the circuit court erred in denying Attorney Cook’s motion to withdraw. This issue was not raised in respondent’s original claim of appeal and is not within the scope of our jurisdiction pursuant to the Supreme Court’s order of remand.
 
 People v Burks,
 
 128 Mich App 255, 257; 339 NW2d 734 (1983);
 
 People v LeFlore (After Remand),
 
 122 Mich App 314, 320; 333 NW2d 47 (1983).