# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. D. Z. FOSTER-RIMSON, Minor.

UNPUBLISHED
July 14, 2016

No. 330938
Wayne Circuit Court
Family Division
LC No. 14-518111-NA

*In re* Z. K. RIMSON, Minor.

No. 330939
Wayne Circuit Court
Family Division
LC No. 14-518303-NA

*In re* FOSTER-RIMSON/FOSTER, Minors.

No. 331065
Wayne Circuit Court
Family Division
LC No. 14-518111-NA

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

Respondent-father C. Rimson and respondent-mother V. Foster are the natural parents of IDZF. Respondents also have a second child in common, IF, who died from severe physical abuse and neglect in October 2014, when he was seven years old. Each respondent also has a child from another relationship. Rimson's other child is ZKR, and Foster's other child is IDLGF. After IF's death, the Department of Health and Human Services filed petitions for jurisdiction over respondents' remaining children and for termination of respondents' parental rights to the children at the initial dispositional hearing. Following a hearing, the trial court terminated respondents' parental rights to the children pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j). In these consolidated appeals, respondent Rimson appeals the trial court's orders that terminated his parental rights to IDZF and ZKR, and respondent Foster appeals the trial court's orders that terminated her parental rights to IDZF and IDLGF. We affirm in all appeals.

-1-

After seven-year-old IF's death in October 2014, a Wayne County medical examiner performed a post-mortem examination to determine the cause of IF's death. According to the medical examiner's report, which was admitted into evidence in these proceedings, IF had numerous physical injuries of varying ages, which were indicative of ongoing physical abuse. He had also developed gangrene and other infections related to his injuries. In addition, the child was suffering from extreme weight loss and dehydration. The malnourishment, injuries, and infectious diseases had progressed over an extended period of time and caused visible indications that the child was in urgent need of protection and medical attention. Respondents did not seek medical attention for IF until after the child became unresponsive in October 2014. They brought the child to a hospital and the child was pronounced dead within minutes after his arrival.

Both respondents were criminally charged and convicted in relation to IF's death. Foster was convicted of involuntary manslaughter, MCL 750.321, torture, MCL 750.85, and first-degree child abuse, MCL 750.136b(2). She was sentenced to concurrent prison terms of 5 to 15 years for the involuntary manslaughter conviction, and 27 to 50 years each for the convictions of torture and child abuse, with an earliest release date of October 2041. Rimson was convicted of involuntary manslaughter, MCL 750.321, and second-degree child abuse, MCL 750.136b(3), for which he received concurrent prison sentences of 10 to 15 years and 5 to 10 years, respectively, with an earliest release date of October 2024.

Following a hearing in November 2015, the trial court found that the circumstances leading to IF's death were "horrific," it asserted jurisdiction over respondents' remaining children, and it determined that termination of respondent's parental rights to the children was warranted under MCL 712A.19b(3)(b)(*i*), (g), and (j), and that termination of respondents' parental rights was in the children's best interests.

## I. STATUTORY GROUNDS FOR TERMINATION

Both respondents argue that the trial court erred in finding the existence of a statutory ground for termination. In an action to terminate parental rights, the petitioner must prove by clear and convincing evidence that at least one statutory ground for termination in MCL 712A.19b(3) exists. MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). We review the trial court's decision for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356. A finding is clearly erroneous when the reviewing court is left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The trial court terminated respondents' parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j),[1] which permit termination under the following circumstances:

[1] Although petitioner had also requested termination of respondents' parental rights under MCL 712A.19b(3)(h) (parent's imprisonment for two or more years) and (k)(*vi*) (abuse involving

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondents argue that the trial court erred in principally relying on the evidence relating to IF's death to support the statutory grounds for termination where petitioner did not present specific evidence concerning the circumstances of IF's death, or evidence showing each respondent's personal involvement in the events that led to IF's death. We disagree. The post-mortem report, which was admitted without objection, clearly established that IF was malnourished over an extended time, that he was physically harmed on multiple occasions, and that he suffered from life-threatening infections over an extended time period. Medical treatment was not sought until the child became unresponsive. Regardless of which respondent was caring for IF at the moment he became unresponsive and died, the evidence clearly and convincingly established that both respondents would have been aware of IF's serious medical condition (which was marked by numerous physical injuries of varying ages, malnutrition, and disease) and that both respondents neglected his condition and nutritional needs for an extended period of time until he died.

We reject Rimson's argument that termination of his parental rights was improper because the circumstances of his involvement in IF's death were "speculative" or because no witnesses specifically eliminated Sudden Infant Death Syndrome or some other underlying medical condition as a cause of IF's death. The post-mortem report overwhelmingly established that IF died because of extended neglect and abuse. The report concludes, "This constellation of injuries resulted from the child being beaten on at least several different occasions." At the very least, the circumstances support a non-speculative inference that Rimson abandoned his parental responsibilities for a long enough time to pass in which IF died from longstanding abuse and neglect. Rimson's unsupported suggestion that the "infant" may have died from SIDS or some other medical condition is not only speculative, but also not applicable to a seven-year-old child.

murder or attempted murder), the trial court did not terminate respondents' parental rights under either of those grounds.

Any suggestion by respondents that their personal culpability in the events that led to IF's death was never adequately established is also negated by the admission of the records of their criminal convictions relating to the child's death. Both respondents essentially claim that the mere admission of the "document" of their convictions is inadequate because such a document lacks sufficient detail to glean what they were aware of and what specific actions they took with respect to IF. However, such claims are without merit. Respondents offer no authority, and we find none, for the premise that the trial court could not take judicial notice of the elements of their convictions to determine the nature of the acts that respondents took with respect to IF.

Respondents' culpability in IF's death supports the statutory grounds for termination under §§ 19b(3)(b)(*i*), (g), and (j). With respect to § 19b(3)(b)(*i*), each respondent was convicted of child abuse in relation to IF, a sibling of the minor children at issue in these proceedings. That evidence satisfies the element that "[t]he child or a sibling of the child has suffered physical injury or physical . . . abuse" and the element that "[t]he parent's act caused the physical injury or physical . . . abuse." The doctrine of anticipatory abuse or neglect "recognizes that how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Considering the severe nature and duration of the abuse of IF, the trial court did not clearly err in finding that the other children were reasonably likely to suffer from injury or abuse in the foreseeable future if placed in respondents' home. The physical injuries to IF did not involve an isolated incident but instead a longstanding pattern of repeated abuse.

The circumstances leading to IF's death and the doctrine of anticipatory abuse and neglect also support termination of respondents' parental rights to their other children under §§ 19b(3)(g) and (j). Respondents clearly failed to provide proper care and custody for the child, and considering the severity and protracted nature of the abuse and neglect, there is no reasonable expectation that they can be trusted to provide proper care and custody of their other children in the future. These circumstances also establish a reasonable likelihood that the children will be harmed if returned to respondents' home.

We reject Foster's reliance on *In re LaFrance*, 306 Mich App 713, 730-731; 858 NW2d 143 (2014), to argue that the anticipatory neglect doctrine should not be applied in this case. This case is factually distinguishable from *In re LaFrance*, in which this Court held that the doctrine of anticipatory neglect did not apply to the respondents' three older children where their fourth, younger child had been dehydrated for several hours and suffered acute kidney failure and the parents did not immediately recognize that child's distress because of the child's other special medical needs. The evidence in this case did not show a mere error in judgment regarding a child's condition, or that Foster failed to provide a higher degree of care to a child with special and demanding needs. Rather, the evidence established that IF was exposed to extreme and ongoing abuse and neglect. Considering the nature and severity of the injuries to IF, and the prolonged period during which he was abused and neglected, it is wholly appropriate to apply the doctrine of anticipatory neglect or abuse to establish a reasonable likelihood that Foster's other child would be harmed if placed in Foster's care.

Foster also argues that termination was not warranted under § 19b(3)(g) because incarceration alone does not support termination and because the trial court failed to consider whether she would be able to care for her children with the help of relatives. Although the

evidence indicated that Foster received a 27-year minimum sentence for her torture conviction, with an earliest release date of October 2041, the trial court did not terminate her parental rights solely on the basis of her incarceration. Indeed, the trial court declined to terminate her parental rights under §19b(3)(h) (incarceration of a parent that deprives a child of normal home for two or more years). The trial court's finding that Foster was unable to provide proper care and custody was based on the post-mortem report and Foster's convictions of first-degree child abuse and involuntary manslaughter in the death of IF, which proved that she was culpable of long-term abuse and neglect.

The record also fails to support Foster's argument that suitable relative placements were available for the children in lieu of terminating Foster's parental rights. The record indicates that petitioner investigated suggested relative placements, but the suggested relatives either were not interested in accepting placement of the children or were determined to be unsuitable. Foster's criticism of petitioner for not making repeated telephone calls to disinterested relatives is unwarranted. If relatives were not diligent in coming forward, the workers were not obligated to recruit them. Because there is no evidence of a suitable relative willing to accept placement of the children, the trial court did not err by failing to pursue that option.

In sum, respondents have failed to establish that the trial court clearly erred in finding that the statutory grounds for termination were established by clear and convincing evidence.

## II. BEST INTERESTS

Foster argues that the trial court erred in finding that termination of her parental rights was in her children's best interests. Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds by a preponderance of the evidence that termination is in the child's best interests. MCL 712A.19b(5); *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). The trial court's best-interests decision is reviewed for clear error. *Id.*

Foster's dereliction of her parental responsibilities was so egregious that her child died after suffering from long-term abuse and neglect. She was convicted of three crimes, including torture, for her actions. She has proven herself completely untrustworthy in the care of children. She betrayed the trust of all of her children, not only IF. Foster attempts to piggyback her own parental rights to the alleged bond between the siblings, IDZF and IDLGF, by arguing that her own parental rights should be preserved in order to avoid separating the siblings. Preserving Foster's parental rights would not ensure that the sisters stay together, especially when Foster will be incarcerated until 2041. Indeed, IDZF and IDLGF have different fathers, and the trial court did not terminate the parental rights of IDLGF's father. That situation could independently impede the two siblings from remaining together even if Foster's parental rights were not terminated. Although Foster suggests that IDLGF's father could also provide a home for IDZF if he achieves reunification with IDLGF, there is no indication in the record that he has any interest in pursuing adoption of IDZF, or that such an arrangement would be suitable or in IDZF's best interests. Considering all the evidence, the trial court did not clearly err in finding that termination of Foster's parental rights was in the children's best interests.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Rimson argues that he was denied the effective assistance of counsel because his trial attorney failed to present evidence to refute petitioner's evidence or attack petitioner's evidence for its lack of specificity. Because Rimson did not raise an ineffective assistance of counsel issue in the trial court, review of this issue is limited to errors apparent on the record. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

The principles of ineffective assistance of counsel in criminal cases apply by analogy to proceedings to terminate parental rights. *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999). To prevail on a claim of ineffective assistance of counsel, respondent must establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Respondent must overcome the presumption that counsel's performance constituted sound strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999).

Although Rimson argues that trial counsel was ineffective for failing to present evidence to challenge the post-mortem findings or to undermine the inference that he was responsible for IF's death, he does not specify what evidence counsel should or could have presented. An attorney's failure to present evidence constitutes ineffective assistance of counsel only if it deprives his client of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012); *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Absent a showing of actual favorable evidence that was not presented, Rimson cannot satisfy either prong for ineffective assistance based on counsel's alleged failure to present evidence.

Rimson also complains that counsel failed to question petitioner's witnesses on cross-examination. Counsel's decisions pertaining to the questioning of witnesses were a matter of trial strategy, which we will not second-guess. *Russell*, 297 Mich App at 716. The record discloses that Rimson's counsel declined to cross-examine some witnesses who had already been cross-examined by Foster's counsel. Although Rimson contends that counsel could have questioned witnesses about the specific facts surrounding IF's death, there is no indication that the witnesses had any personal knowledge of facts that would have undermined the conclusions in the post-mortem report or the evidence of respondents' criminal convictions. Accordingly, Rimson has failed to establish that counsel's lack of cross-examination was objectively unreasonable, or that there is a reasonable probability that further cross-examination would have affected the outcome.

Rimson also criticizes counsel's waiver of opening statement. The purpose of an opening statement is to outline what the advocate intends to show. *People v Moss*, 70 Mich App 18, 32; 245 NW2d 389 (1976). "[T]he waiver of an opening statement involves "a subjective judgment on the part of trial counsel which can rarely, if ever, be the basis for a successful claim of ineffective assistance of counsel." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citation and quotation marks omitted). Rimson does not suggest what meaningful purpose an opening statement would have served. The trial judge was already familiar with the case because he had presided over several prior hearings. Notably, all other parties had also waived their opening statements. Under these circumstances, there is no basis for concluding

that counsel's decision to waive opening statement was objectively unreasonable, or that there was a reasonably probability that counsel's waiver of opening statement affected the outcome.

Rimson also criticizes counsel's brief closing argument. In a criminal case, counsel's complete concession of the defendant's guilt renders counsel ineffective. *People v Krysztopaniec*, 170 Mich App 588, 596; 429 NW2d 828 (1988). However, counsel is not ineffective for conceding what is obvious based on the evidence. *People v Wise*, 134 Mich App 82, 98; 351 NW2d 255 (1984). In this case, counsel did not concede any fact other than the obvious fact that Rimson was incarcerated. Counsel did not address the post-mortem report or the nature of Rimson's convictions, but Rimson does not explain how counsel should have addressed these matters. And considering the report and Rimson's convictions, we fail to see how counsel could have addressed these matters in any manner that would have affected the outcome. Accordingly, this claim of ineffective assistance also fails.

Rimson also complains that trial counsel failed to advocate for the children's placement with a relative. Because ZKR was placed in the custody of her mother, this argument pertains only to IDZF. The record discloses that the possibility of relative placement was discussed at three different hearings. Caseworkers testified that suggested relatives either failed to return the workers' calls, or were found to be unsuitable. Although Rimson asserts in his brief on appeal that his sister was able and willing to care for IDZF, nothing in the record supports this assertion. Thus, there is no basis in the record for concluding that counsel was ineffective for not doing more to facilitate a feasible relative placement.

Affirmed.


/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Kelly