# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* B. J. WINANS, Minor.

UNPUBLISHED
July 28, 2016

No. 331336
Ogemaw Circuit Court
Family Division
LC No. 14-015351-NA

Before: STEPHENS, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Respondent-mother appeals as of right from the order terminating her parental rights to her minor son under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist).[1] We affirm.

Respondent first argues that her attorney rendered ineffective assistance of counsel by failing to assert her right to accommodations under the Americans with Disabilities Act (ADA) 42 USC 12101 *et seq*. We disagree.

The principles of ineffective assistance of counsel in criminal cases apply by analogy to proceedings to terminate parental rights. *In re Osborne (On Remand, After Remand),* 237 Mich App 597, 606; 603 NW2d 824 (1999). To prevail on a claim of ineffective assistance of counsel, a respondent must establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001). Respondent must overcome the presumption that counsel's performance constituted sound strategy. *People v Henry,* 239 Mich App 140, 146; 607 NW2d 767 (1999).

Respondent has failed to identify the rights specifically granted her by the ADA and to show that any rights she may have had under the ADA were violated by petitioner during the pendency of the proceedings. Additionally, this Court has held that a claim alleging a violation of the ADA "must be raised in a timely manner . . . so that any reasonable accommodations can

---

[1] The trial court also terminated the parental rights of respondent-father, but he is not a party to this appeal.

be made." *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). Thus, the claim should be made when the service plan is adopted or shortly thereafter so that the court may address it; waiting until after a termination is too late. *Id*. Respondent has not shown that counsel failed to recognize a cognizable ADA issue in a timely manner under *Terry*. Thus, respondent has not met her burden of establishing the requisite factual predicate for her claim.[2] *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Nonetheless, we note that the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC 12132. A "qualified individual with a disability" is

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. [42 USC 12131(2).]

It appears from respondent's argument that the alleged disability is "functioning at the lower end of the *average* range of intelligence," and "does not process incoming information effectively" (*Id.*, 16).[3] Respondent has made no attempt to show that either of these conditions is a disability within the meaning of the ADA. "It is not sufficient for a party simply to announce a position . . . and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).[4]

Respondent next argues that the statutory basis for terminating her parental rights was not established by clear and convincing evidence. We disagree.

---

[2] In such a case, a respondent's sole remedy is to commence a separate action for discrimination under the ADA. *In re Terry*, 240 Mich App at 26; see also *In re Hicks/Brown*, ___ Mich App ___; ___ NW2d ___ (2016), slip op at 9, lv pending.

[3] Although respondent mentions her total disability as a result of herniated discs, respondent has not alleged in her argument that petitioner failed to reasonably accommodate physical limitations resulting from her back problems.

[4] We also note that the parent agency treatment plan in each of the case service plans include among respondent's strengths her communication/interpersonal skills ("[Respondent] appears to have an above average grasp of the English language"), intellectual capacity ("Dr. Simmons reports [respondent] is operating in the lower end of the average range of intelligence with a verbal IQ of 92 which places her in the 30th percentile of intelligence", and literacy ("[Respondent] presents and demonstrates that she is able to read at least at a high school level").

Under MCL 712A.19b(3)(c)(*i*), a court may terminate a parent's rights if the court finds that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Termination is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence" shows that a respondent failed to accomplish "any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). The trial court's decision that a ground for termination of parental rights has been proved by clear and convincing evidence is reviewed for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). Likewise, a court's factual findings are reviewed for clear error, "giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296–297; 690 NW2d 505 (2004).

Respondent does not specifically address the sufficiency of the trial court's findings with respect to this statutory factor. Rather, respondent merely asserts that the trial court's finding that respondent did not benefit from services is clearly erroneous. She simply asserts that she did comply with services. The gist of respondent's argument is that her alleged failure to comply with services is attributable to deficient efforts by petitioner. In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan. MCL 712A.18f(1), (2), and (4). Respondent argues that the case service plan did not identify goals or provide targeted services, but merely provided therapy to address anger management and parenting skills. A review of the case service plans, however, reveals that the initial parent agency treatment plan within the case service plan identified specific needs, described the needs, provided a goal, a desired outcome, and an action step for each identified need, which needs included substance abuse, emotional stability, resource availability and management, and parenting skills[5] (Case Service Plan, 8/7/14). Petitioner provided referrals for individual therapy, anger management, and parenting skills, and a parent aide for parenting skills, and also provided referrals for psychological and substance abuse evaluations. Under these circumstances, the trial court did not clearly err by finding that reasonable efforts were made to preserve and reunify the family.

Although not specifically addressed by respondent, we note that testimony presented by petitioner at the termination hearing revealed that respondent failed to benefit from the services provided and failed to rectify the conditions that led to the adjudication. For example, one of the primary conditions that brought the child into care was respondent's use of numerous prescription medications and self-medicating with marijuana, which left her groggy, sleepy, and unable to stay awake to properly parent this special needs child who was in need of "hypervigilant parenting." Respondent failed to comply with the trial court's request to seek a second opinion regarding the prescription medication from a physician outside the medical practice that had prescribed the medication and failed to seek out alternative medications that would not cause her to be tired and groggy. At the time of the termination hearing, respondent was still taking the same medications that she was taking at the time the child was removed from

---

[5] Subsequent case service plans eliminated resource management, but included sexual abuse after the child revealed allegations of sexual abuse.

her care. Another issue that brought the child into care was respondent's inability to properly parent the child due to her anger issues and lack of parenting skills. Petitioner provided individual therapy to address respondent's anger issues and to develop a better parenting style, and also provided an in-home parent aide to assist respondent with parenting skills. Respondent was discharged from treatment with the therapist, "having made little progress toward her treatment goals." The evidence established that respondent had made little if any progress concerning her understanding of the child's needs and that she had not internalized the techniques needed to parent a child with the child's behavioral issues. At the time of the hearing, a therapist's prognosis remained guarded, and a psychologist concluded that there was "no alternative but to recommend termination of parental rights." Given that the child had been in care for 495 days and that respondent had not benefited from services, the trial court did not clearly err by finding no reasonable likelihood that the conditions leading to adjudication would be rectified within a reasonable time considering that the child was nine years old at the time of the hearing.

Lastly, respondent argues that the trial court clearly erred by finding that it was in the best interests of the child to terminate respondent's parental rights. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713; see also MCL 712A.19b(3) and (5). To make its best-interest determination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41–42; 823 NW2d 144 (2012) (citations omitted). Further considerations may include the parent's history of mental health issues, *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001), and the child's safety and well-being, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). We review a trial court's decision regarding a child's best interests for clear error. *In re White*, 303 Mich App at 713.

Respondent first argues that the trial court improperly considered respondent's housing when terminating parental rights because housing was not identified as a need in the case service plan. However, a review of the trial court's findings reveals that housing itself was not a basis for termination. Rather, the trial court noted that the child was highly sexualized, that he was exhibiting signs of sexual abuse, that respondent admitted that her apartment was not an appropriate place for the child to return to because it was the location where he had seen people having sex and where he was allegedly victimized by someone else, and that respondent had made no attempt to remove herself from that situation. The trial court's reference to the home related to respondent's ability to keep the child safe from sexual abuse and was an appropriate consideration.

Respondent also argues that she complied with the trial court's directive to seek alternatives to her prescription medication and that the trial court erred by finding that the second opinion that she sought "was insufficient because it was from another doctor in the same office." Respondent has again misinterpreted the trial court's finding. The trial court noted that the substance abuse counseling report that respondent provided for the first time at the termination

hearing indicated "that it would appear her prescription medications may cause side effects that are negatively influencing her ability to parent." The trial court noted that "the side effect[] of those pain medications is that she falls asleep. And, a child like this has to have 24/7 parenting. And, if you're sleeping during the day, you're not going to be able to parent your child." The trial court noted that it asked respondent to "seek out alternatives for your pain. Whether it be acupuncture, or other pain alternatives. There are other things out there for pain." The trial court found that simply getting another recommendation from another doctor in the same medical practice and staying on the same medications was not "an alternative to what you are on right now. Instead, you're seeking out a medical marijuana card. Which is going to make your condition worse for ability to parent this special needs child." Clearly, the trial court's concern with respect to respondent's extensive medication and use of marijuana was her ability to parent the child and keep him safe.

Respondent also contends that the trial court failed to address respondent's bond with the child. A respondent's bond with a child is only one factor among many possible factors. The trial court made findings regarding respondent's parenting ability, her ability to keep the child safe from sexual abuse, her mental health issues, her substance abuse, and her failure to benefit from services after the child had been removed from her care. The trial court considered the entire record when making its findings regarding the child's best interests, and the record supported its findings. The trial court did not clearly err in its determination that termination of respondent's parental rights was in the best interests of the child.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher