# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L.N. HUNT and M.J. NICHOLS, Minors.

UNPUBLISHED
January 16, 2018

No. 338809
Berrien Circuit Court
Family Division
LC No. 2016-000057-NA

Before: METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor children, LNH and MJN, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), and (g) (failure to provide proper care and custody).[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On April 22, 2016, a petition was filed referencing two minor children, petitioner and the father. The allegations were that the minor children were neglected and that the home or environment was unfit. Specifically, with respect to mother, the petition alleged that mother continued to struggle with substance abuse issues and mental health issues, continued to test positive for illegal drugs, and admitted to recent methamphetamine use. The petition also alleged that mother did not have housing, transportation, or income and that mother moved from place to place. The petition further alleged that a Child Protective Services (CPS) referral was received in October 2015 indicating that the one of the minor children tested positive for marijuana when he was born, that mother did not receive any prenatal care before giving birth to him, and that there were concerns about the family's living environment. Petitioner admitted that she smoked marijuana throughout her pregnancy. Mother also tested positive for marijuana and using methamphetamine.

Petitioner attended the preliminary hearing with her counsel and waived the probable cause finding. A petition was authorized. Over the next year, petitioner moved to Indiana, Iowa

---

[1] The trial court also terminated the parental rights of father, but father has not appealed in this matter.

and within Michigan. Services were set up to assist her, though all involved agreed that petitioner had not benefited from services, leading to the filing of a petition to terminate parental rights.

On May 18, 2017, a termination hearing was held. Both petitioner and her attorney were present at the beginning of the hearing. Before any testimony was given, the following discussion occurred:

> *Petitioner Attorney*: Before we get started the mother's indicated to me she wants to release her rights. And [assistant prosecutor] says he wants to go forward, which is fine. But if the mother is of that mind perhaps she's not going to contest this.

> *The Court*: Okay. Did you wish to inquire of her?

> *Petitioner Attorney*: Yes. [Mother].

> [*Petitioner*]: Yes.

> *Petitioner Attorney*: Did you hear what I just said to the referee?

> [*Petitioner*]: Yes.

> *Petitioner Attorney*: Because you told me just a minute ago you that you'd like to release your rights and the Department is ready to go ahead with the termination hearing and the first witness has been called. And I'm suggesting to the Court that you do not want to contest this. That you don't want to fight the termination.

> [*Petitioner*]: Yeah…

> *The Court*: Okay. I guess with that [*assistant prosecutor*] you're still gonna have to proceed on the father so I guess whatever evidence you wish to present I will certainly—

> *Mr. Lutz*: The mother is indicating that she does not want to attend the rest of this hearing.

> *The Court*: Okay. Understanding that the likelihood of your rights getting terminated to your two children is great under the circumstances. It is your right, obviously, I guess in lieu of releasing your rights to proceed as is being indicated. I guess under the circumstances—where are you currently residing so we can at least send you your appellate rights if you're choosing not to remain.

> \* \* \*

> [*The LGAL*]: Is there a reason we can't give them to her right now?

* * *

*The Court*: Yeah, I haven't made a decision. He still has to put his proofs on.

* * *

*The Court*: We will sent [sic] your appellate rights to you at that address that's provided. Should your address change before you receive those rights then you're gonna want to contact your attorney, okay—

[*Petitioner*]: Okay.

* * *

*Petitioner Attorney*: Now do you also agree what you don't require—need me to represent you at this hearing because you're not going to attend and contest. Right.

[*Petitioner*]: Yeah.

The Court made findings and terminated petitioner's parental rights as indicated above. This appeal then ensued.

## II. ANALYSIS

On appeal, mother first argues that her due process rights were violated because the referee (1) accepted a verbal statement from mother releasing her parental rights without fully informing her of the consequences of release and (2) denied her right to counsel by allowing mother's attorney to leave the courtroom and not participate in the termination hearing without obtaining a valid waiver of the right to counsel.

Mother did not raise these arguments below, and they are therefore unpreserved. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Issues involving the validity of a release of parental rights are ordinarily reviewed for an abuse of discretion, *In re Burns*, 236 Mich App 291, 292; 599 NW2d 783 (1999), and we review de novo as a question of constitutional law whether proceedings complied with a party's right to due process, *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009). However, we review unpreserved claims of constitutional error for plain error affecting substantial rights. *In re Williams*, 286 Mich App 253, 274; 779 NW2d 286 (2009).

First, with respect to mother's argument regarding her "release" of parental rights, we conclude that mother never executed a release of her parental rights and that the termination of her parental rights was not based on any purported release. Although mother's attorney informed the referee at the beginning of the termination hearing that mother had expressed a desire to release her parental rights, it is clear from our review of the transcript that mother actually decided to simply leave the hearing and *not contest the termination* of her parental rights, essentially acquiescing to the termination. Indeed, the referee did not seem to believe that

-3-

such a release had been attempted or executed: the referee indicated that mother's appellate rights could not be given to her before she left the hearing because a decision had not yet been made, the termination proceedings continued, the prosecutor introduced evidence related to mother's conduct, and mother's parental rights were terminated based on the referee's findings that statutory grounds for termination had been established by clear and convincing evidence and that termination was the best interests of the minor children. "[A] respondent can consent to termination of his parental rights under the juvenile code . . . ." *In re Toler*, 193 Mich App 474, 475-476, 477; 484 NW2d 672 (1992). Nonetheless, in the instant case, the referee merely allowed mother to leave as was her expressed desire and proceeded with the termination hearing.

To the extent that mother appears to argue that the referee erred by not following the procedures mandated for the acceptance of a parent's release of parental rights in MCL 710.29(7), which is contained within the Michigan Adoption Code, MCL 710.21 *et seq.*, mother's argument is without merit because the instant matter occurred under the Michigan Juvenile Code, MCL 712A.1 *et seq.*, and not the Adoption Code. Accordingly, even though petitioner's counsel referred to a "release," this reference did not bring the proceedings within the purview of the Adoption Code such that the procedures of MCL 710.29(7) would be implicated. *In re Toler*, 193 Mich App at 478 ("Respondent's decision to consent to the termination of his parental rights does not transfer the proceeding from the juvenile code to the adoption code."). We have previously noted that terminating parental rights under the Adoption Code involves "a completely separate statutory proceeding from a termination under the juvenile code." *In re Jones*, 286 Mich App 126, 128; 777 NW2d 728 (2009). Therefore, the referee was not automatically required in this case to follow the procedures outlined in MCL 710.29(7). Accordingly, petitioner is not entitled to relief on this issue. *In re Williams*, 286 Mich App at 274.

Next, with respect to petitioner's argument that her right to counsel was violated when the referee permitted her attorney to leave the termination hearing, we conclude that petitioner effectively waived her right to counsel at the termination hearing.

This Court has recognized that "the United States Constitution guarantees a right to counsel in parental rights termination cases" and that "the constitutional right of due process confers on indigent parents the right to appointed counsel at hearings that may involve the termination of their parental rights." *In re Williams*, 286 Mich App at 275-276. However, the right to appointed counsel for indigent respondents in termination proceedings is not absolute. The United States Supreme Court has held that the Constitution does not require counsel to be appointed in every parental termination proceeding and that it would "leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." *Lassiter v Dep't of Social Servs*, 452 US 18, 31-32; 101 S Ct 2153; 68 L Ed 2d 640 (1981). This Court has also stated that in the termination context, "it is unclear whether [a] respondent's right to court-appointed counsel is guaranteed by the Michigan Constitution." *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999); see also *In re Powers Minors*, 244 Mich App 111, 121, 121 n 10; 624 NW2d 472 (2000).

In Michigan, a respondent's right to counsel in termination proceedings is also protected by statute and court rule. *In re Williams*, 286 Mich App at 274. Specifically, the right to counsel

-4-

in proceedings to terminate parental rights and the right to an appointed attorney for an indigent respondent in such proceedings are embodied in MCL 712A.17c(4) and (5), as well as MCR 3.915(B)(1)(a) and (b). However, this right to counsel may be waived. MCL 712A.17c(6) provides,

> Except as otherwise provided in this subsection, in a proceeding under section 2(b) or (c) of this chapter, the respondent may waive his or her right to an attorney. A respondent who is a minor may not waive his or her right to an attorney if the respondent's parent or guardian ad litem objects.

Additionally, MCR 3.915(B)(1)(c) provides that "[t]he respondent may waive the right to the assistance of an attorney, except that the court shall not accept the waiver by a respondent who is a minor when a parent, guardian, legal custodian, or guardian ad litem objects to the waiver."

The court rule "requires affirmative action on the part of the respondent to trigger the appointment *and continuation of appointed counsel* in all hearings which may affect the respondent's parental rights," and the court rule "charges parents with 'some minimum responsibility' in regard to having counsel appointed for their benefit." *In re Hall*, 188 Mich App 217, 218, 222; 469 NW2d 56 (1991) (emphasis added). In accordance with the waiver provision in the court rule, this Court has explicitly stated that the right to counsel in proceedings to terminate parental rights "may be 'waived' or relinquished." *Id*. at 222.

As quoted above, petitioner was present at the beginning of the termination hearing, indicated that she did not want to contest the termination of her parental rights, and indicated that she did not wish for her attorney to remain at the hearing to represent her. Petitioner was specifically asked if it was true that she did not wish to contest the termination, and she answered affirmatively. Petitioner was also informed by the referee that the likelihood of her parental rights to the minor children being terminated was "great under the circumstances" if petitioner chose to leave the hearing and not contest the termination. Petitioner was subsequently asked if it was true that she was not going to stay at the hearing, was not going to contest the termination, and did not require her attorney's representation at the hearing as a result. Petitioner answered these questions affirmatively. Clearly, petitioner waived her right to be present and waived her right to have her attorney contest the allegations. Nothing in the record could lead us to conclude that petitioner had a desire to present any evidence or argument to oppose the termination petition. The questioning of petitioner, although brief, established that she was informed of the likely consequences of her choices. By indicating that this was the course that she wished to pursue, petitioner waived or relinquished her right to be represented by counsel until she reasserted that right, which she never did. *In re Hall*, 188 Mich App at 222. Therefore, petitioner has not demonstrated plain error based on this ground. *In re Williams*, 286 Mich App at 274.

Next, petitioner argues that she was denied the effective assistance of counsel because her attorney failed to represent her at the termination hearing, failed to present evidence of mother's poor mental health, and failed to provide evidence in the form of tangible documentation to show that mother had sufficiently addressed her substance abuse problem.

"[T]he principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002) (quotation marks and citation omitted), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014).

Petitioner did not move for an evidentiary hearing or otherwise raise this issue in the lower court, and our review is limited to mistakes apparent on the record. *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017). "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*. "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009) (citation omitted).

"[A]lthough child protective proceedings are not criminal in nature, where the right to effective counsel arises from the Sixth Amendment, the Due Process Clause indirectly guarantees effective assistance of counsel in the context of child protective proceedings." *In re HRC*, 286 Mich App at 458. "The right to counsel also encompasses the right to the effective assistance of counsel." *Foster*, 319 Mich App at 391 (quotation marks and citation omitted).

"For a defendant to establish a claim that he was denied his state or federal constitutional right to the effective assistance of counsel, he must show that his attorney's representation fell below an objective standard of reasonableness and that this was so prejudicial to him that he was denied a fair trial." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Accordingly, a defendant requesting reversal of an otherwise valid conviction bears the burden of proving that (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Foster*, 319 Mich App at 391 (quotation marks and citation omitted).

In this case, petitioner argues that her attorney Lutz was ineffective because he left the hearing without first ensuring that mother was making a fully informed decision regarding the release of her parental rights and the waiver of her right to counsel. However, as discussed above, the referee did not rely on a "release" to terminate mother's parental rights, and petitioner validly waived her right to counsel at the termination hearing. Thus, it is clear from the record that this course of action was a result of petitioner's decision. While a lawyer is to act as an advisor and advocate for the client, the lawyer ultimately is the client's representative with the client retaining decision-making authority over significant decisions. See, e.g., *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995), citing MRPC 1.2(a) and MRPC1.4(b). In accord with these general principles, petitioner has not shown that her attorney's performance was constitutionally deficient. *Foster*, 319 Mich App at 391.

With respect to petitioner's arguments directed at her attorney's alleged failures to introduce certain evidence, petitioner's argument relies entirely on the speculative effects of hypothetical evidence that (1) petitioner suffered from some type of mental impairment beyond her emotional issues that were discussed throughout the proceedings and that (2) petitioner had fully addressed her substance abuse issues. However, petitioner does not specifically describe

any actual evidence that would fit these categories. Petitioner does not even claim that such evidence actually exists, and there is absolutely no indication on this record that such evidence has ever existed. Petitioner merely claims that if such evidence existed, then it would have been important for her attorney to have introduced it. We agree that if such evidence existed it should have been introduced; however it was incumbent on appellant to make that evidence available to this Court. In the absence of any such evidence, we must find that petitioner has not demonstrated that counsel's performance was deficient in this respect because the appellant bears "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Petitioner has thus failed to demonstrate that her attorney performed deficiently and has therefore not shown that she received ineffective assistance of counsel. *Strickland v Washington*, 466 US 668, 700; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra