# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LEWIS/HARRIS/COLVIN, Minors.

UNPUBLISHED
March 27, 2018

No. 339819
Roscommon Circuit Court
Family Division
LC No. 16-723380-NA

*In re* H. G. COLVIN, Minor.

No. 339820
Roscommon Circuit Court
Family Division
LC No. 16-723380-NA

Before: STEPHENS, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal the trial court's orders terminating respondent-mother's parental rights to ML, AH, and HC, and terminating respondent-father's parental rights to HC, pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*). We affirm in both appeals.

## I. BASIC FACTS

ML and AH were removed from respondents' custody after ML was admitted to Helen DeVos Children's Hospital (HDCH) in December 2016, with extensive bruising and other injuries suspected to be the result of physical abuse. Respondents were unable to provide a plausible explanation for the injuries. Expert testimony from a physician indicated that ML's injuries had to have been caused by a violent force. Evidence was also presented that ML and AH had a history of other injuries that led to prior involvement with Child Protective Services (CPS). In addition, the children's daycare provider testified that the children often arrived at daycare with bruises on their faces. ML and AH were both placed in foster care. HC was born two months later, and he too was placed in foster care along with his siblings.

The trial court found by clear and convincing evidence that ML sustained severe injuries on or after December 16, 2016, during a period in which only respondents had access to the child. The court noted that neither respondent was able to offer even the vaguest explanation as to how the injuries occurred. The trial court also noted that the children had a history of prior

-1-

injuries, but had not sustained any unexplained injuries since they were removed from respondents' care. The court acknowledged that parenting time sessions had been appropriate, but noted that such settings were supervised. The trial court found that all three children would be at risk of future injury if placed in respondents' care, particularly considering that they were unable to provide a viable explanation for ML's serious injuries. The court found clear and convincing evidence to terminate respondent-mother's parental rights to all three children, and to terminate respondent-father's parental rights to HC, under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*). The court also found that termination of respondents' parental rights was in the children's best interests.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Both respondents argue that the trial court erred in finding that the statutory grounds for termination were established by clear and convincing evidence. We disagree.[1]

The petitioner bears the burden of proving a statutory ground for termination under MCL 712A.19b(3) by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*), which permit termination under the following circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act cause the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

---

[1] This Court reviews for clear error a trial court's decision that a statutory ground for termination has been proven by clear and convincing evidence. See MCR 3.977(K); *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009); *In re Trejo*, 462 Mich at 356-357.

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or the capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*iii*) Battering, torture, or other severe physical abuse.

We conclude that the trial court did not clearly err by terminating respondent-mother's parental rights to all three children, and by terminating respondent-father's parental rights to HC. ML was admitted to HDCH on December 18, 2016, and diagnosed with very serious injuries, including a head injury and an altered mental state. Dr. May, an expert in pediatrics and child abuse, testified that the injuries did not occur naturally, and concluded that they resulted from physical abuse. Dr. May acknowledged that ML had received treatment at an urgent care facility and an emergency room on December 17 and 18, 2016, but stated that the injuries diagnosed at HDCH would not have been detected during those visits because the physicians at those facilities did not have access to all the necessary specialized equipment.

The uncontradicted evidence also supported the trial court's finding that respondents had exclusive care and custody of ML and AH during the period of December 16 to 18, 2016, and that ML exhibited no signs of injury or altered mental status before that period. The children's daycare provider testified that she last saw ML on December 14, 2016, and the child did not have bruises or an altered mental state at that time. Respondent-father testified that he saw ML on December 15, 2016, and the child did not act ill or exhibit any signs of injury. ML began exhibiting signs of illness and injury while in the exclusive care of respondents.

The fact that the trial court was unable to determine which respondent caused ML's injuries is immaterial. In *In re Ellis*, 294 Mich App 30; 817 NW2d 111 (2011), we affirmed the trial court's termination of the parental rights of both parents under similar circumstances. In that case, the parents acknowledged that they were their child's sole caretakers, but could offer no explanation for the child's severe injuries. *In re Ellis*, 294 Mich App at 32. We held that the trial court properly determined that at least one parent perpetrated the abuse and at least one of them failed to prevent it; which parent did which act was of no matter. *Id*. at 35. We stated:

We hold that termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that

-3-

respondent or respondents must have either caused or failed to prevent the child's injuries. [*In re Ellis*, 294 Mich App at 35-36.]

In the instant case, the evidence showed that ML suffered severe physical abuse while in respondents' exclusive custody. Neither respondent was willing to offer any explanation for the injuries. Moreover, ML had previously been treated for bruises and a leg fracture, for which respondents were unable to offer a satisfactory explanation. In addition, the children's daycare provider testified that the children frequently arrived at daycare with bruises on their face, which caused sufficient concern that the daycare provider took photographs of the children's conditions. This evidence supports a finding that each respondent either caused or failed to prevent the abuse, and that future abuse was likely to reoccur. The rationale in *In re Ellis* supports the termination of respondent-mother's parental rights to all three children (AH and HC under a theory of anticipatory neglect or abuse[2]) under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*), and supports the termination of respondent-father's parental rights to HC under the same theory of anticipatory neglect or abuse.

The evidence also supports termination of respondent-mother's parental rights under MCL 712A.19b(3)(g) because she failed to provide proper care and custody for ML and AH and, in light of the evidence of the history of unexplained injuries to the children, there is no reasonable expectation that she will be able to provide proper care and custody within a reasonable period of time. Although termination of respondent-father's parental rights under MCL 712A.19b(3)(g) may not have been proper because he never had an opportunity to provide any care for his child HC, and his supervised parenting visits were appropriate, because only one statutory ground for termination is necessary, any error in relying on § 19b(3)(g) as an additional ground for termination is harmless. *In re Powers,* 244 Mich App 111, 118; 624 NW2d 472 (2000).

## B. BEST INTERESTS OF THE CHILDREN

Both respondents also challenge the trial court's decision that termination of their parental rights was in the children's best interests.[3] In determining a child's best interests, the trial court may consider the child's need for stability and permanency and whether the child is

---

[2] The doctrine of anticipatory neglect or abuse permits a trial court to evaluate the danger of leaving one child with a respondent through consideration of the respondent's abuse of another child. See *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014).

[3] A circuit court's decision regarding a child's best interests is also reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357. " 'A finding is "clearly erroneous" [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Rood*, 483 Mich at 91, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). This Court gives due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

progressing in its current placement. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). In addition, the trial court may consider the children's bond to the parent, the parent's parenting ability, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

Respondent-mother emphasizes that a bond exists between her and ML and AH. According to the foster mother, however, both children experienced negative emotional outbursts and behavior problems after visits with respondent-mother. HC was removed from respondents' custody at birth. The trial court did not clearly err in finding that any bond that respondents and the children shared was outweighed by respondents' refusal to acknowledge any responsibility for the injuries to ML. Moreover, the evidence showed that the children were thriving in their foster care placement, that they had not experienced any unexplained injuries since their removal from respondents' care, and that their foster parents wished to adopt them. The opportunity to live in a stable, non-threatening environment was in the children's best interests.

Accordingly, the trial court did not clearly err in finding that termination of respondents' parental rights was in the best interests of the children.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, respondent-mother argues that trial counsel rendered ineffective assistance by failing to obtain and introduce the medical records from ML's visits to the urgent care facility and the emergency room before she was diagnosed at HDCH. We disagree.

The principles of ineffective assistance of counsel in criminal cases apply by analogy to proceedings to terminate parental rights. *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999). Respondent-mother did not raise the issue of ineffective assistance of counsel in an appropriate motion in the trial court. Therefore, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To establish ineffective assistance of counsel, respondent-mother must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Counsel must have made errors so serious that he was not performing as the "counsel" guaranteed by the federal and state constitutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Carbin*, 463 Mich 590, 599; 623 NW2d 884 (2001). Counsel's deficient performance must also have resulted in prejudice. To demonstrate prejudice, respondent-mother must show a reasonable probability that but for counsel's error, the result of the proceeding would have been different, *id*. at 600, and that the result that did occur was fundamentally unfair or unreliable. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Counsel is presumed to have afforded effective assistance, and respondent-mother has the burden of proving otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

We conclude that respondent-mother has not overcome the presumption that she was afforded the effective assistance of counsel. First, respondent-mother has not factually

established the content of the medical records. Respondent-mother has the burden of establishing the factual predicate of her claim of ineffective assistance of counsel. *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999). Respondent-mother suggests that the medical records from the urgent care and emergency room visits would indicate that ML did not suffer from the injuries diagnosed at HDCH, which would support her theory that she did not know how the injuries to ML occurred. However, even assuming that the urgent care and emergency room records did not identify the same injuries diagnosed at HDCH, it does not logically follow that respondent-mother would not have had knowledge of what happened to ML. Such evidence would only have shown that respondent-mother did not have knowledge of the specific type of injury that ML suffered, not that she did not know how ML was injured.

Moreover, evidence was presented, and the trial court was aware, that the urgent care and emergency room visits did not lead to the same diagnosis reached at the HDCH. However, Dr. May, one of the physicians who treated ML at HDCH, testified that the physicians at the urgent care and the emergency room would not have had access to the specialized equipment needed to fully diagnose ML. Under these circumstances, respondent-mother has not shown that counsel's failure to obtain and introduce the medical records was objectively unreasonable, or that she was prejudiced by counsel's failure to present this evidence. Indeed, in her brief on appeal, respondent-mother "acknowledges that what the contents of the records are and that they would have helped in the mother's defense is speculation."

Accordingly, respondent-mother has not established that counsel's failure to produce the records amounted to ineffective assistance of counsel.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause